THE ESSEX COUNTY ELECTRIC COMPANY v. ANDREW KELLY.

1. The liability of a master to a servant for an injury received in his employ will be established by proof that the injury was caused by the master's willful wrongdoing or resulted from his breach of a duty owed to the servant arising out of the relation between them.

2. A duty of a master to a servant in his employ is to take reasonable care and precaution not to subject the servant to other or greater dangers than those which are obvious or naturally incident to the employment, the risk of which the servant takes by accepting employment.

3. The master must take reasonable care to furnish tools and appliances with which, and places on or about which, the servant is employed to work, reasonably safe for the work.

4. When a servant receives an injury from a latent defect in such appliances or places, evidence to establish the master's liability must justify the inference that he either knew or, by the exercise of the care required of him, might have known of the defect, but he will not be responsible for a defect which the most careful scrutiny would not have disclosed.

Kelly, the defendant in error, was a ."lineman" in the employ of the Essex County Electric Company, the plaintiff in error. This action was brought by Kelly, in the Circuit, to recover damages from the company for an injury received by him from the breaking of a pole upon which he was working by direction of an officer of the company. Judgment having been rendered in his favor, the company brought this writ of error and assigned various errors upon exceptions taken at the trial.

Argued at February Term, 1893, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, REED and MAGIE.

For the plaintiff in error, *Edward A. Day.*

For the defendant in error, *Samuel Kalisch.*

The opinion of the court was delivered by

MAGIE, J. After the evidence produced by Kelly had been put in, counsel for the company moved for a nonsuit on the ground that it did not establish any liability on the part of the company for the injury Kelly had received. The motion was denied and an exception taken.

After the evidence produced by both parties had been put in, counsel for the company requested the trial court to direct the jury that the liability of the company for the injury to Kelly had not been made out. The request was refused and an exception taken.

Two of the assignments of error are based upon these exceptions, and they may be considered together, for they obviously present the same question, viz., whether, upon the facts established by proof, a neglect of duty on the part of the company to Kelly may be inferred. *Newark Passenger Railway Co.* v. *Block,* 26 *Vroom* 605.

The parties bore to each other the relation of master and servant.

The liability of a master to a servant for an injury received in his employ will be established by proof that the injury was caused by the master's willful wrongdoing or resulted from the breach of any duty which the master owed the servant arising out of the relation between them. *Bish. Non-Cont. L.*, § 639.

There was no pretence in this case that the company had been guilty of any willful wrong to Kelly. His claim was, and is, that the injury he received was the result of a breach of a duty which the company owed him.

The better view of a master's duty to a servant is that which, taking into consideration the well-settled doctrine that a servant, by accepting employment, consents to take the risk of all dangers obviously or naturally incident to such employment, imposes on the master a positive duty to take reasonable care and precaution not to subject the servant to other or greater dangers. The rule thus formulated is of wide application, but, with reference to such cases as that now under consideration, may be thus stated : The master must take reasonable care to have the tools and appliances with which, and the places on or about which, the servant is to be employed, reasonably safe for the work the latter is employed to do. *Shear. & R. Negl.*, §§ 92, 93; *Smith M. & S.* *236; *Harrison* v. *Central Railroad Co.*, 2 *Vroom* 293; *Hutchinson* v. *Y., N. & B. Railway Co.*, 5 *Exch.* 343.

Applying the rule thus stated to the case before us, it is obvious that, to justify the submission to the jury of the liability of the company to Kelly, the facts established must have warranted the inference that the breaking of the pole, which was the cause of his injury, resulted from a breach of the company's duty to him in respect to that pole.

The company did not guarantee the safety of the pole, nor was it its duty to provide a sufficient pole, as was erroneously held below. Its duty was less extensive and would have been satisfied if it had taken reasonable care to provide a pole of sufficient strength to bear the strain of the wires and the

weight of the servant employed thereon to do what was required to fit them for the service of the company.

The mere fact that Kelly received injury does not establish, even *prima facie,* the negligence or breach of duty of the company.  Evidence which may justify the inference of negligence of the master, but also and equally the inference of the negligence of a fellow-servant, will not be sufficient; nor will evidence which is equally consistent with the absence as well as with the existence of negligence on the part of the master.  *Bahr* v. *Lombard, &c., Co.,* 24 *Vroom* 238; *Duffy* v. *Upton,* 113 *Mass.* 544; *Rose* v. *Boston and Albany Railroad Co.,* 58 *N. Y.* 217; *Baulec* v. *New York and Harlem Railway Co.,* 59 *Id.* 356; *Cotton* v. *Wood,* 8 *C. B.* (*N. S.*) 568.

When a servant receives an injury by reason of a latent defect in the appliances with which or the places in which he is employed, to establish the liability of the master the evidence must justify the inference that the master either knew, or, by the exercise of the care and diligence required of him by the rule, might have known of the defect.  *Wright* v. *New York Central Railroad Co.,* 25 *N. Y.* 562; *Devlin* v. *Smith,* 89 *Id.* 470; *Holden* v. *Fitchburg Railway Co.,* 129 *Mass.* 268.  A master will not be responsible for defects which could not have been discovered by the most careful scrutiny.  *Ladd* v. *New Bedford Railway Co.,* 119 *Id.* 412; *Spicer* v. *South Boston Iron Co.,* 138 *Id.* 426.

The rule which required the company to take reasonable care and precaution to furnish a pole suitable to be used for the purpose to which it was put, doubtless required it to take like care to preserve the pole in fit condition, and to that end to reasonably examine whether or not it became unfit or unsafe from wear and tear or otherwise.  It is a matter of judicial disagreement whether a master can discharge the duty last named and the similar duty of keeping tools and appliances in repair, by selecting and employing competent persons to make inspections and repairs.  In our courts it is held that the master's duty may be thus discharged.  *Harrison* v. *Cen-*

*tral Railroad Co., ubi supra; Rogers Locomotive Works* v. *Hand,* 21 *Vroom* 464; *McKinley Fell.-Serv.,* §§ 28, 32–35.

Turning to the evidence presented by the bills of exception, we find the following facts established and undisputed: The pole in question had been in use about two years and stood erected outside the curb line of a public street. It carried various wires, having a cross-bar fastened to it by lag-bolts which passed through the pole. It was also connected with a pole on the other side of the street by a wire drawn tight and used to support an electric light. Kelly, with others, was directed to take down the pole, remove it to a spot inside the curb line and readjust the wires thereon. In taking it down the pole fell, the cross-bar was partially detached by one of the lag-bolts being torn or dragged through the pole and a part of the pole was splintered off. Kelly replaced the cross-bar by boring a new hole and adjusting the lag-bolt therein. The pole thus changed was erected in the new position. Kelly went to its top, drew up the wire connecting it with the pole on the opposite side of the street, and while in the act of stretching that wire taut by a device called " strap and vise," which caused considerable strain, the pole broke and Kelly fell with the broken portion to the ground.

In respect to the cause of the break, the facts were in dispute. Kelly attributed the break to the rottenness of a part of the center of the pole, which he discovered on examination of the broken piece. Witnesses for the company, who had also examined that piece and the remainder of the pole, testified that there was no rottenness therein and attributed the fracture to the injury done by the previous fall, which had seriously weakened the pole.

When facts are in dispute, the cause must, in general, be submitted to the jury. But where, upon the evidence, any deduction which can be drawn from the facts, fails to establish the liability of defendant, the cause is not one for a jury.

There is no room for doubt that the fracture of the pole was due either to the cause assigned by Kelly or to that assigned by the witnesses for the company. If it was due to

either of these causes the liability of the company was not made out, for that liability depended upon proof of a breach of its duty in that regard, to which breach of duty the fall might reasonably be attributed. The duty in question is, as has been shown, that of taking reasonable care to have this pole when erected, and to keep it after erection, of sufficient strength. It is a duty of reasonable inspection and examination.

That there was a failure to perform this duty is not made out either by direct proof or by any justifiable inference. Kelly testified that, during the two years of his employment, he did not know of any inspection. But his ignorance was not inconsistent with the most careful precaution on the part of the company, and an offer to prove the custom of the company was excluded on his objection.

If such a fracture could raise an inference of neglect of duty under certain circumstances, on the principle *res ipsa loquitur*, this is not that case, for it is obvious that the most rigid scrutiny would not have disclosed the defect to which Kelly attributes the break. He himself observed the bolt withdrawn through the pole, and he bored a hole to replace it close to the place where the pole broke, but he found no weakness and testified that he mounted the pole confident of its strength. No examination short of dividing the pole and destroying it for use would have disclosed that defect.

It was error to allow a jury to infer a neglect of the duty to take reasonable care to originally select and subsequently keep this pole of sufficient strength, when the defect was latent and undiscoverable by any precaution which reason would prescribe.

If, on the other hand, the fracture of the pole was due to the weakness produced by its fall, it was equally erroneous to permit a jury to infer a neglect of duty on the part of the company. The fall occurred just before the accident, and Kelly himself saw what tended to diminish the strength of the pole. Without making known the facts to the company or its officers, he mounted the pole and subjected it to the

strain of the strap and vise. No breach of duty on the part of the company could be inferred under such circumstances.

The liability of the defendant not having been made out, it was error to submit the cause to the jury. For this reason the judgment below should be reversed.

This result renders it unnecessary to consider other questions raised by the assignments of error.