WILLIAM P. JOHNSON, PLAINTIFF IN ERROR, v. THE DEVOE SNUFF COMPANY, DEFENDANT IN ERROR.

Argued June 29, 1898—Decided November 14, 1898.

1. The doctrine of the assumption of obvious risks by the servant applies as well to those which first arise or become known to the servant during the services as to those in contemplation at the original hiring.
2. Upon the discovery by the servant that he is being exposed to dangers in his employment not within the contract of hiring, it is his duty to give notice of the same to the master, and protest against such new or added dangers, and if he fails to do so and continues in the service, he will be held to have assumed the risks thereof.

3. A servant lost a thumb and suffered other injuries by his hand being caught in the rollers of a snuff mill. He had a stick in his hand which was one of the tools provided by the master, and was engaged in feeding leaf tobacco to the mill and relieving the rollers when they became clogged. He was a man of full age and an experienced attendant upon the mill. The master had ordered the servant to grind a lot of green or damp tobacco, to which the mill was not accustomed, its previous operations by the servant having been confined to the dry leaf. This material caused the rollers to become clogged more easily, and to exhibit an increased jumping motion above what ordinarily attended its operations, and enhanced somewhat the danger of the operator. The plaintiff continued to operate the mill under the changed conditions for three hours before the accident happened, in a well-lighted room, without making any complaint or objection to the master of the increased danger, which was obvious. Upon the trial of a suit for damages by the servant, at the close of the plaintiff's case, he was nonsuited on the ground that the danger was an obvious one, the risk of which the servant, under the circumstances, must be held to have assumed. *Held*, on error, that the nonsuit was right.

On error to the Middlesex Circuit Court.

For the plaintiff in error, *Robert Adrain.*

For the defendant in error, *Willard P. Voorhees.*

The opinion of the court was delivered by

HENDRICKSON, J.   This proceeding is brought to review a judgment of nonsuit ordered in the Middlesex County Circuit Court at the close of the plaintiff's case.

The suit was brought to recover damages for the loss of a thumb and other injuries suffered by the plaintiff while at work operating a snuff mill for the defendant at Spotswood, New Jersey, on August 1st, 1895.

The nonsuit was ordered on the ground that the dangers of the work were perfectly obvious to the plaintiff, who was a man of full age, and that in hiring himself to the defendant to perform that work he assumed the obvious risks incident thereto; that all this clearly appeared by the evidence, and hence that the action could not be sustained against the plaintiff.

The legality of the ruling is challenged on two grounds—*first*, because the machine was being put by the master to an improper use, causing increased risks unknown to the plaintiff, and as to which the master was bound to warn him, which he had failed to do; *second*, that the question of obvious risks was one for the jury.

In examining the grounds of this contention, it is necessary to observe that the part of the mill where the accident happened consists of four mulls opening through a heavy table or plate resting horizontally upon supports, strongly fastened to the floor. In each of these mulls an upright shaft revolves, turning rollers thereto attached against the sides of the mulls, which are circular in form, gradually contracting in size to the base, from which there are apertures for the escape of the snuff after it is thoroughly ground. There are three rollers to each shaft, held in place near the sides of the mull by the arms of a casting, through which the shaft passes close to the top of the mull. In the open mull between these arms the tobacco leaf is thrown in feeding the mill, and a stick two feet long is used by the operator to regulate the feeding and relieve the rollers when clogged by accumulating material. The shafts are revolved by means of cog-wheels above, and are so adjusted that they may rise slightly when the rollers become clogged and fall again as the clogged material passes on or is removed, giving rise to motions that are described as the jumping of the roller.

It is this increased jumping motion of the shaft and rollers which plaintiff in error claims to have been the cause of his injury.

He insists that this was caused by a direct interference of the master with the regular and normal use of the mill, which was to grind dry tobacco, and by his introducing and directing to be ground therein green or damp tobacco, for which the mill was not adapted.

The dry leaf was used in the manufacture of Scotch snuff, and the green or damp leaf in the manufacture of the Maccaboy variety. The latter was ground in other mulls of the

mill, of the same general construction except as to the rollers, which did not revolve, and which did not have the jumping motion.

Other facts developed were that in the grinding of Scotch snuff it was the custom to wet the material with pickle, at a certain stage of the grinding, the result of which would be to cause some jumping of the rollers, but not to so great a degree as they did in grinding this green tobacco on the occasion in question; that all the morning, from eight to eleven on the day of the accident, while grinding this damp leaf tobacco, the rollers worked hard and kept jumping up, but not to so great a degree as at the time of the accident, when plaintiff estimated the jump to have been about two inches; that he had to use the stick frequently to pull the clogged material out from between the rollers, and while so engaged at this juncture the stick was caught in the rollers, and his hand with it; that the stick was a tool provided for the operator to use in feeding the mills and relieving the rollers when clogged; that it did not become necessary at any time for the operator in using the stick to put his hand below the top of the mull; that he had been instructed by the foreman of defendant to use the stick in this work; that it was also necessary to use this stick to relieve the rollers, whenever the pickle was used in wetting the snuff, and that plaintiff had worked as attendant upon these same mulls for two years, during a former employment, and also for the three months preceding this accident; that he had also worked for many years in a licorice mill, attending the stones and machinery therein.

It is upon this state of facts that plaintiff in error insists that the master is responsible for the injury complained of.

It would seem to be a sufficient answer to this contention to say that the facts show that plaintiff was of full age, and familiar with the work and with the machinery upon which he was engaged, and of this jumping movement of the roller, to which the cause of the accident is assigned, for it is a well-settled principle that where one enters a service, he assumes the risks of all dangers obviously or naturally inci-

dent to such employment. *Whart. Negl.* 199 ; *Electric Co.* v. *Kelly,* 28 *Vroom* 100 ; *Foley* v. *Jersey City Electric Light Co.,* 25 *Id.* 411.

The counsel for plaintiff in error does not question the existence of this general doctrine, but denies its application to a case like this, where, as he assumes, the machine was put to an improper use, thus creating a risk which was not obvious to plaintiff and which he did not assume.

It cannot be fairly said that the mill was put to an improper use in the grinding of the green or damp leaf tobacco, but rather that the plaintiff had not been called upon before to use the mill for that kind of work, and that the mulls did work harder in the operation, and that its work was perhaps attended with additional risk. But still it is quite apparent that the plaintiff accepted the additional risk of this particular work, and that the danger was an obvious one.

According to the evidence, he continued this work that day for three hours, without an objection or protest of any kind made by him to the master or foreman, who ordered it to be done.

That the fact of the hard working of the rollers and their tendency to clog and jump in the process of grinding during the whole of that morning was known to the plaintiff is apparent from the following extract from the evidence given in answer to the court:

"*Q.* (By the Court)—Did these rollers begin to jump as soon as you put in this coarse stuff?

"*A.* Yes, sir; it was so light you could not get much in and it would raise them right up.

"*Q.* It kept doing that right along?

"*A.* Yes, sir; the stuff was so light and so coarse the rollers were away up.

"*Q.* What time was it when you began to grind this wet tobacco?

"*A.* I suppose about eight o'clock.

"*Q.* You noticed this jumping all the morning?

"*A.* Yes, sir; they worked hard; they did not jump so

much; this mull where I got hurt did not, but the rollers kept working hard."

In answer to further questions the plaintiff testified that the trouble was caused by the leaf getting in between the rollers, and that after it got down a certain ways he would take a stick and pull it out between the rollers; that he had ground that snuff from eight o'clock until eleven without making any objection to it.

There is no allegation in this case that the master did not furnish the employe with proper and suitable tools or appliances for the work and a safe place in which to perform it.

The evidence is that the mill and its appliances were in good working order and that the room was well lighted at the time of the accident, which occurred about eleven o'clock in the morning.

But the plaintiff contends that the increased danger of this change in the use of the mill was not included in the contract of hiring, and that, therefore, the general rule as to obvious risks does not apply.

It is true that a master who exposes his servants to dangers not within the contract of hiring violates it and may become responsible for injuries resulting therefrom, but it is equally true that an executed waiver does not require a consideration to render it valid, and that the doctrine of the assumption of risks applies to those which first arise or become known to the servant during the service, as to those in contemplation at the original hiring; and therefore a servant who, on discovering these dangers, makes no complaint or protest to the master, but continues in the service, assumes the risks, so that he cannot complain though injury follows. *Bish. Noncont. L.* 677; *Beach Cont. Negl.* 140; 1 *Shearm. & R. Negl.* (*5th ed.*) 221.

In *Mundle* v. *Hill Manufacturing Co.*, 86 *Me.* 400, this doctrine was recognized. The court, in its opinion, says that the decisions of their own court, as well as elsewhere, hold that a plaintiff may be precluded from recovering when he voluntarily assumes a risk which he knows and

appreciates, whether existing at the time he enters the service or coming into existence afterwards. The following cases cited in the opinion are also in point : *Leary* v. *Railroad Co.,* 139 *Mass.* 580 ; *Fitzgerald* v. *Paper Co.,* 155 *Mass.* 155.

It was held likewise in *Bonnet* v. *Railway Co.,* 31 *S. W. Rep.* 525 (*Tex. Cir. App.*), that "where the dangers consequent upon the negligence of an employe in having work done in an unusual and dangerous manner are apparent to a person of ordinary intelligence, an employe engaging voluntarily in this work assumes the risk of injury from these causes."

Now, were the dangers to which the plaintiff was exposed in this service of so obvious a character that, under the rule as stated, he must be held to have assumed the risk which resulted in his injury?

The rule is, that the servant is held by his contract of hiring to assume the risk of injury from the ordinary dangers of the employment ; that is to say, from such dangers as are known to him or discernable by the exercise of ordinary care on his part, or which should have been observed by one ordinarily skilled in the employment in which he engages. *Beach Cont. Negl.* 139 ; *Western Union Telegraph Co.* v. *McMullen,* 29 *Vroom* 155.

The plaintiff was a man of mature years, and was an experienced operator of the mill at which he was working when the accident happened. It is contended for him, that the danger from the special work of that day was not obvious in the sense mentioned but of a latent character, but the undisputed evidence shows that the danger of the hands being caught in the rollers was one that had been present even in its ordinary and normal operations, so much so that plaintiff was supplied with the stick to do the required work, and instructed by the foreman of the defendant to use it for that purpose ; also, that it was not necessary for him to place his hands within the mull when at work.

It already appears that the jumping motion of the rollers was fully known to the plaintiff long before the accident, and hence that the catching of the stick by them was one of the ever present possibilities of the work.

If plaintiff did not know by actual happening that this was one of the dangers of his employment, it is clear that it was a danger of such a character that, under the rule stated, plaintiff should have known of it by the exercise of ordinary care.

The other point to be considered is whether the questions raised upon the motion to nonsuit and already discussed were such as should have been submitted to a jury.

The facts being undisputed, the only matter that could possibly go to a jury was the question whether the risk was an obvious one.

If the question thus raised is, under the evidence, a fairly debatable one, then it should go the jury, otherwise not. *Pennsylvania Railroad Co.* v. *Righter*, 13 *Vroom* 180 ; *Comben* v. *Belleville Stone Co.*, 30 *Id.* 226.

The facts of the case bearing upon this point have been already fully discussed and lead to the conclusion, in my mind, that this risk was so clearly an obvious one as not to leave the matter open to debate or doubt.

The points raised having been thus disposed of favorably to the defendant in error, the judgment below must be affirmed.

*For affirmance*—COLLINS, DEPUE, GARRISON, LIPPINCOTT, LUDLOW, VAN SYCKEL, ADAMS, BOGERT, HENDRICKSON, NIXON, VREDENBURGH.    11.

*For reversal*—None.