J. EDWARD ADDICKS ET AL., RECEIVERS, PLAINTIFFS IN ERROR, v. JOSEPH CHRISTOPH, DEFENDANT IN ERROR.

Argued November 22, 1898—Decided March 6, 1899.

1. Where a minor servant is employed at dangerous work, the risks and hazards of which are not, by reason of his youth and inexperience, so obvious that he can fully appreciate them, it is the duty of the master to explain to such servant the dangers of the service, and to instruct him how to avoid them.

2. When a duty thus devolves upon the master to explain to his minor servant the hazards of the service, and to instruct him how to avoid them, such duty cannot be delegated, and where the master has entrusted that duty to a foreman, he cannot escape the responsibility of failure to perform it, on the ground that such foreman was a fellow-servant.

3. Where the master, under such circumstances, neglects such duty to instruct his minor servant and to warn him of the dangers of the service, or gives him improper instructions, the master will be responsible for an injury resulting from his neglect.

4. Where the master is required, by his duty, to thus instruct his minor servant, and warn him against danger, he must put his warning in such plain language as to be sure that the young servant understands and appreciates the danger.

5. Under the circumstances of this case, the refusal of the trial judge to nonsuit the plaintiff, or to direct a verdict for the defendants, was sustained, and the questions raised by the evidence were held to have been properly submitted to the jury.

On error to the Supreme Court.

For the plaintiffs in error, *Charles D. Thompson.*

For the defendant in error, *Voorhees & Booraem.*

The opinion of the court was delivered by

HENDRICKSON, J.   The matter alleged for error in this cause is the refusal of the trial judge at the Middlesex Circuit, to nonsuit the defendant in error, who was the plaintiff below, at the close of his case ; and also for his refusal to direct a verdict for the defendants.

The suit was for damages to the plaintiff, suffered by his foot having been caught in a machine for pressing clay into sewer pipe and injured, so that amputation of part of the foot became necessary.

The accident occurred at defendants' terra cotta works at Perth Amboy. The suit was in tort, and the gist of the action was the alleged failure of duty, on the defendants' part, to properly warn the plaintiff, their employe, of the dangers of the service, and to instruct him how to avoid them in a way and manner suited to his condition in life. The plaintiff was foreign born, a youth under sixteen years of age, ignorant of our language and without experience, previous to his employment, in the operation of the machine.

The machine in question was a steam press erected in an upright position, with a piston from above, known as a plunger, descending out of a steam chest into a cylinder twenty inches in diameter, forty inches deep, the top of which extended one foot and two inches above the floor, whereby the clay which was fed into the cylinder was pressed into the moulds prepared for it in the room below. The clay balls were cylindrical in shape, about eight inches in diameter, and weighed from seventy-five to ninety pounds apiece, and it took seven or eight of these to fill the cylinder. The plunger fitted the cylinder closely, and was governed in its motions by an engineer on the floor below. About half a minute was allowed for the filling in the cylinder before the plunger descended, but no signal was provided as to when it would start. Its movements were quite rapid when the steam was on, but when shut off the plunger would descend slowly.

On the occasion of the accident it had descended slowly to a point about one foot above the cylinder, where its further

progress was arrested by the clay balls that had become clogged on the rim of the cylinder. It was while in the effort to push in the clogging clay that his foot went into the cylinder and was caught by the plunger before he could withdraw it.

That the act of the plaintiff in using his foot for the purpose stated was one that ordinarily would be regarded as obviously dangerous must be admitted. The learned trial judge stated in his charge to the jury, and justly I think, that if the plaintiff had been an adult at the time of the injury he must have assumed the risk, even though acting under the instructions of the master.

The general rule thus recognized is that when one enters a service he assumes the risks of all dangers obviously or naturally incident to such employment. *Electric Co.* v. *Kelly,* 28 *Vroom* 100 ; *Foley* v. *Light Co.,* 25 *Id.* 411.; *Johnson* v. *Devoe Snuff Co., ante p.* 417.

It is claimed, however, on the part of the plaintiff, that his present action should be sustained under an existing modification of this general rule, which holds that it is the duty of the employer of an infant to explain to him fully the hazards and dangers connected with the business, and to instruct him how to avoid them ; that minor servants are held to assume by their contract of employment only those ordinary risks of their service which are obvious to them or have been pointed out in a manner suited to their youth and inexperience. This doctrine has been approved in this and other jurisdictions. *Smith* v. *Irwin,* 22 *Vroom* 508 ; 1 *Shearm. & R. Negl.* (*5th ed.*) 218 ; 13 *Am. & Eng. Encycl. L.* 897.'

The question then is, did the master in this case perform his duty under the rule as thus stated, or rather, was the question of his fair compliance with the rule, under the circumstances, left in such doubt as to be at least debatable, and hence a proper one to be submitted to the jury ?

There was evidence on the part of the plaintiff tending to prove that the defendants, by their foreman, undertook to in-

struct the plaintiff as to the duties of his employment, but that they had failed to point out to him the dangers of this service or to instruct him how to avoid them.

The plaintiff testified on this subject to the effect that he could not understand our language, and that the foreman instructed him by signs; that when he first went to work on the press, the foreman showed him everything as to how the clay should be thrown in, and on the third day after he began work the foreman instructed him by signs, that whenever the clay became clogged he should kick it in with his foot. Upon this point the evidence reads as follows : " *Q.* Did you understand the foreman's language ? *A.* No. *Q.* Describe what he did when he told you to use your foot? *A.* He first put clay into the cylinder and it got stuck and he used his foot, and told me to do likewise." It was also in evidence that no tool or appliance was provided with which to press down the clogging clay.

The plaintiff had been employed in these works for several weeks as a messenger boy, carrying water to the men and the like, and had thereby seen incidentally the working of the machine, but he had not been employed in any service connected with it. Another circumstance was developed, which indicated that the ordinary danger of this use of the foot, was enhanced at times by a condition that would not be so obvious to a young and inexperienced operator. Sometimes, as a result of the clogging, a bridge would form across the cylinder, leaving a vacant space below, and it seems reasonable to infer that this may have been the situation on the occasion of this accident. For it appears that when the plaintiff pressed his foot against the obstruction it went down suddenly and plaintiff's foot with it.

It seems to me that under all the circumstances the question of whether the defendants had performed their duty in pointing out to the plaintiff the dangers and hazards of the employment, and how to avoid them, in a manner suited to his youth and inexperience, was one about which opinions might reasonably differ, and hence was a proper one to go to the jury.

There is another feature of this case, as it seems to me, that also justifies the trial court in its refusal to nonsuit, and that is the existence of evidence that defendants gave direction to plaintiff to use his foot for the purpose stated.

This direction, if made, involved an exposure to danger which might have been so obvious to an employe of mature years as to have defeated his remedy for damages, in case of injury therefrom, but when given to a servant so young and with so little experience as was the plaintiff, then I think, to say the least, that a fairly debatable question arises, whether, in view of this direction, he was not entitled to cautions and instructions as to the particular danger and as to how to avoid it.

This direction may also be regarded, I think, in the light of an instruction to the plaintiff, and, as such, a question arises whether it was a proper or an improper instruction to be given to the youthful plaintiff under the circumstances.

For if in such case improper instructions are given, and as a result the servant sustains injury, the master is liable. It was so held in *Tagg* v. *McGeorge*, 155 *Pa. St.* 368, the language of the court being that when young persons without experience are employed to work with dangerous machines, it is the duty of the employer to give suitable instructions as to the manner of using them, and warning as to the hazards of carelessness in their use. If the employer neglects this duty, or if he gives improper instructions, he is responsible for the injury resulting from his neglect of duty.

It is proper to say here that the defendants, as a part of their case, admitted that the defendants had given the plaintiff instructions with regard to the matter of using his foot in pressing down the clogging clay, but gave testimony to the effect that plaintiff was instructed by signs not to use his foot for the purpose stated and warned to keep his feet and hands from under the plunger. This, of course, came too late to have any effect upon the motion to nonsuit, and it could have little or no weight upon the motion to direct a verdict, for the reason that it was quite clear that plaintiff was ignorant

of our language and that the instructions and warnings, if any, were made by signs only, and in view of the contradictory evidence it became a proper question for the jury as to what the instructions and warnings really were and whether they were imparted in a manner that the plaintiff could be reasonably expected to have understood them correctly.

For the rule is that where the master is required to instruct young servants in their work and warn them against dangers to which it exposes them, he must put this warning in such plain language as to be sure that they understand and appreciate the danger. 1 *Shearm. & R. Negl.* (5*th ed.*) 219. I think, therefore, that the motion to nonsuit was properly refused.

The contention that the evidence fails to show that the person who gave the alleged instruction to plaintiff was the foreman of the defendants cannot be sustained. While the plaintiff's evidence was somewhat inconsistent on this point, yet, allowing for the fact that the witness was testifying through an interpreter, I think the fair inference from the testimony is that he rightly designated the foreman as the person who gave him the instruction but was unable to give his name. In this he was afterwards corroborated by the foreman himself, who was called by the defendants.

It has been further urged that if the foreman did give such instructions, he was acting as fellow-servant, and hence his negligence could not bind the master, the case of *Maher* v. *Thropp*, 30 *Vroom* 186, being cited as authority.

The answer to that is, that in the case cited the master had supplied the workman with proper implements to work with, but by the direction of the foreman, who was also engaged in the common employment, he undertook to do his work with other tools, in consequence of which he received the injury complained of.

In this respect the case now before us is clearly distinguishable from the one cited. Here the master had failed to supply any tool or implement for the work that led to plaintiff's injury, and the question was, under the evidence, whether the

latter was not acting at the time, under instructions; which the master was bound to give, in obedience to a duty which he could not delegate.

The refusal to direct a verdict at the close of the case is also sustained, because the only new element introduced by defendants' evidence was a conflict in the testimony, which was for the jury to settle.

The other exceptions assigned were not pressed at the argument, and finding no error in the record, I will vote to affirm.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, DEPUE, VAN SYCKEL, GARRISON, LIPPINCOTT, GUMMERE, LUDLOW, NIXON, HENDRICKSON, ADAMS, VREDENBURGH. 12.

*For reversal*—None.