GEORGE HARDY, DEFENDANT IN ERROR, v. SULPHUR MINING COMPANY, PLAINTIFF IN ERROR.

Argued February 27, 1907—Decided June 10, 1907.

1. Masters owe to their servants the duty of taking reasonable care in providing them a reasonably safe place in which to work, and of maintaining it in a reasonably safe condition during the employment, having regard to the character of the services required and the dangers that a reasonably prudent man would apprehend under the circumstances of each particular case.

2. Where an injury arises to a workman by reason of the united negligence of a master and a fellow-servant, the master is liable to respond for such injuries.

3. An employe assumes the risk of such dangers attending the prosecution of his work as he would discover by the exercise of ordinary care for his personal safety, and for hurt happening to him from those dangers the employer is not responsible.

4. A charge which, by the fair import of its language, confines the obvious ·dangers, of which an employe assumes the risk, to the dangers arising from facts known to him does not properly embody the rule last above stated.

On error to Passaic Circuit Court.

Before Justices GARRISON, SWAYZE and TRENCHARD.

For the plaintiff in error, *Lindabury, Depue & Faulks.*

For the defendant in error, *Michael Dunn.*

The opinion of the court was delivered by

TRENCHARD, J. This writ of error brings under review a judgment of the Passaic Circuit Court in favor of the defendant in error, the plaintiff below, in an action of tort for negligence.

Upon the trial there was evidence tending to prove the following facts: George Hardy, the plaintiff below, who resided in this state, was injured while working at the bottom of a shaft in a mine operated by the defendant below, the Sulphur Mining Company, in the State of Massachusetts. He was thirty-four years old and was employed as a shaftsman or drill runner, and had been so employed by the defendant for about one month. The shaft in which Hardy was working was one thousand one hundred feet deep. It was not perpendicular but ran at an angle, and was timbered on the inside with twelve by twelve timbers and was about sixteen feet wide and twelve feet high. The ore and other materials to be removed from the mine were carried up in a small car or skip which ran on rails resting on the lower side of the shaft. The shaft

was driven to intersect the veins of sulphur-bearing ore, and when it reached a vein a driftway was run horizontally from the shaft. At each of these driftways was constructed a platform. At the time of the accident ore was being removed from a driftway known as "No. 16," the lowest point that had then been opened in the mine. At this point a platform had been constructed. The ore was carried in wheelbarrows to and across the platform to the skip. Hardy was sent down below this platform, where it was comparatively dark, and was preparing to begin work having for its object the sinking the shaft to a lower level, when he was hurt by a stone which weighed two hundred and fifty pounds falling through the platform. The platform in question was constructed of heavy timbering, upon which were laid two-inch planks, secured by spikes. There were several openings in this platform. One was known as the skipway on the lower side of the platform; one a bucket hole, also on the lower side; a manway on the upper side intended to be used as a means of ingress and egress to the bottom of shaft, and a hole from eight or ten feet in length and two to three feet wide along the edge of the platform next to the hang wall. The workmen operated in day and night-shifts. At the time of the accident Hardy was working nights. The evidence also tended to show that the stone which hurt the plaintiff was being wheeled in a wheelbarrow by another workman across the platform and fell through the hole along the edge of the platform which had been made by blasting operations. That defendant knew of the existence of this hole and the plaintiff did not know of it. That the platform was out of repair in this respect because there was no planking on the premises for repair purposes.

A reversal of the judgment is sought on the grounds—*first,* because of the refusal of the trial judge to nonsuit and direct a verdict; *second,* because of the refusal to charge as requested; *third,* because of errors in the charge.

We think the refusal of the trial judge to nonsuit and direct a verdict was right.

Masters owe to their servants the duty of taking reason-

able care in providing them a reasonably safe place in which to work, and of maintaining it in a reasonably safe condition during the employment, having regard to the character of the services required and the dangers that a reasonably prudent man would apprehend under the circumstances of each particular case. *Essex County Electric Co.* v. *Kelly*, 28 *Vroom* 100; *Belleville Stone Co.* v. *Mooney*, 32 *Id.* 253; *affirming*, 31 *Id.* 323; *Hustis* v. *James A. Bannister Co.*, 34 *Id.* 465; *Smith* v. *Erie Railroad Co.*, 38 *Id.* 636.

As heretofore stated, there was evidence justifying an inference that the plaintiff was injured by the stone falling through the hole along the edge of the platform next to the hang wall; that the hole was due to the destruction of the planks of the platform by blasts; that it had not been repaired because there was not sufficient plank on the premises for the purpose, and that these latter facts were known to the defendant and unknown to the plaintiff.

It was therefore proper to submit the question of the defendant's negligence to the jury.

And this is so notwithstanding the contention of the plaintiff that the accident was caused in part by the negligence of a fellow-servant. The rule is that where an injury arises to a workman by reason of the united negligence of a master and a fellow-servant, the master is liable to respond for such injuries. *Belleville Stone Co.* v. *Mooney*, 31 *Vroom* 324; *affirmed*, 32 *Id.* 253.

But we think there was error in the judge's charge.

The learned trial judge allowed the jury to find a verdict for the plaintiff based on the failure of the defendant to guard the manway, on the theory that the stone which struck the plaintiff fell through the manway.

It seems from the evidence that this manway was necessarily left unprotected, but if it was practicable to cover or otherwise guard it, the plaintiff, it would seem, must have known that it was unguarded. But, however that may be, the case certainly called for an accurate instruction from the trial judge on the doctrine of the assumption of obvious risks.

The rule is that a servant who, on entering into a contract of employment, knows the dangers of the premises or place of work, or by the use of ordinary care could see and understand them, assumes the risks which arise therefrom. 20 *Am. & Eng. Encycl. L.* (2d ed.) 114, and cases there cited.

The doctrine of the assumption of obvious risks by the servant applies as well to those which first arise or become known to the servant during the services as those in contemplation at the original hiring. *Johnson* v. *Devoe Snuff Co., 33 Vroom* 417.

The trial judge, after in effect charging the jury that the plaintiff assumed the risk of all obvious dangers, further instructed them as follows: "And if you reach the conclusion that Mr. Hardy knew of this hole, whether it was a manway or whether it was the hole of which he speaks, if he knew of it, and knew it was there unprotected, it would be obvious to him, and he assumed all risk of working below."

Again he said: "Suppose you find the master had built a manway and had built that unprotected, and that Hardy had no notice of the danger of that fact, and suppose you find that the master could reasonably anticipate that in wheeling material by there, that some of it would be likely to fall, and fall down through this hole, then the master would be responsible, and in that case Mr. Hardy would receive your verdict."

To this charge of the court the defendant, after specifically calling the attention of the trial judge to the fact that the rule stated by him as to the assumption of obvious risks was not sufficiently comprehensive in the respect hereinafter stated, prayed and was allowed an exception thereto and assigned error thereon.

The rule thus laid down was too narrow a one for this reason: Under the authorities an employe assumes the risk of such dangers attending the prosecution of his work as he would discover by the exercise of ordinary care for his personal safety, and for hurt happening to him from those dangers the employer is not responsible. A charge which, by the fair import of its language, confines the obvious dangers,

of which an employe assumes the risk, to the dangers arising from facts known to him, does not properly embody the rule above stated. *Atha & Illingsworth Co.* v. *Costello,* 34 *Vroom* 27.

The charge dealt with facts known to the plaintiff or of which he had notice; the situation required a statement of the legal effect of facts which he would have known had he exercised ordinary care to keep himself informed as to matters concerning which it was his duty to inquire, namely, the condition of the manway as it affected his personal safety while engaged in his work. As was said by Mr. Justice Dixon, in *Atha & Illingsworth Co.* v. *Costello, supra:* "The distinction between the facts known to a person and those which would have become known to him if he exercised ordinary care involves a question of negligence, and when applied to the relation of master and servant involves a question of legal responsibility. The conduct of an employe, tested by the facts known to him, may disclose no negligence and no legal assumption of risk, while the same conduct, tested by the facts which ordinary care would have revealed to him, may appear negligent or show that in law he assumed the risk of injury. Either of these conclusions would secure immunity to the master."

While the charge that the plaintiff assumed the risk of all obvious dangers might, if it had been left without modification, have sufficiently expressed the true rule, yet it was not so left, for when the trial judge came to apply it to the facts of the case he confined it, by the reasonable import of his language, to those dangers which the plaintiff's actual knowledge would indicate.

On this assignment of error the judgment should be reversed and the record remitted for a new trial.