# GEORGE STOSKOFF, Respondent, v. CARL A. WICKLUND, Appellant.

(193 N. W. 312.)

**Appeal and error — unanswered question as to whether medical association protected physicians in malpractice actions held prejudicial error though objection sustained by court.**

1. In an action for damages for malpractice, where the plaintiff in making his case, on cross-examination of the defendant under the statute, inquired whether defendant was a member of the Northwestern Medical Association, and being answered in the affirmative, he further asked whether defendant had reported the case in to the association, and again whether it was not one of the purposes of the association to protect doctors against malpractice actions, *held* prejudicial error even though the objections interposed to such questions were sustained by the trial court, and the witness not required to answer.

**Physicians and surgeons — negligence of physician held for jury.**

2. In an action for damages for malpractice, evidence examined and held that on the record as made there is presented a question of negligence as one of fact for determination by the jury.

**Physicians and surgeons — injury must be proximate consequence of negligence of physician.**

3. The mere fact of the loss of a leg under the care of a physician, although negligence on the part of such physician is established, is not in itself sufficient to sustain a verdict for damages in the absence of evidence tending to show that such loss was the proximate consequence of such negligence.

Opinion filed April 17, 1923.

Appeal and Error, 4 C. J. § 2939 p. 959 n. 84; Physicians and Surgeons, 30 Cyc. p. 1575 n. 51; p. 1588 n. 83.

Appeal from the District Court of Williams County, *Lowe, J.*
Defendant, Carl A. Wicklund, appeals from the judgment.
Reversed.

*Bosard & Twiford* and *Craven & Converse,* for appellant.

Note.—On degree of care and skill which a physician or surgeon must exercise, see notes in 37 L.R.A. 830; L.R.A.1915C, 595.

On liability of physicians and surgeons for negligence and malpractice, see note in 93 Am. St. Rep. 657.

On liability of physicians and surgeons for negligence, see note in 48 Am. Dec. 481. See also 21 R. C. L. 381, 382; 3 R. C. L. Supp. 1152; 4 R. C. L. Supp. 1413.

A physician is only held to the exercise of ordinary skill, and in an action for malpractice the burden of proof is upon the plaintiff to show the want of ordinary skill and diligence and to show that the injury alleged resulted from a failure to exercise these requisites. McKee v. Allen, 94 Ill. App. 147.

"If in any case nonexpert testimony of the injury, of the method of treatment adopted, and of the resulting conditions may be such evidence of negligent treatment by an attending surgeon as a jury may act upon,—this case (malpractice) is not such an one." Neifert v. Hasley, 112 N. W. 705.

"This motion should have been granted. There is no proof in the case, other than a mere statement of the plaintiff, that the extraction of the tooth was made in a negligent or unskilful manner. No medical evidence of any sort was introduced. To entitle plaintiff to recover, she must show that the defendants failed to use that degree of professional skill or knowledge which the law requires of them. Nothing is shown in this case, except that the plaintiff suffered severely, was compelled to revisit the dentist for subsequent treatment, and that at some later period a physician was called in. This does not establish defendant's negligence. The judgment should be reversed, and new trial ordered." McCarthy v. Harvard Dental Parlors, 121 N. Y. Supp. 343; Miller v. Toles (Mich.) L.R.A.1915C, 595, 150 N. W. 118; Phoebus v. Mather, 181 Ill. App. 274; Barker v. Lane, 23 R. I. 224, 49 Atl. 963; Farrel v. Haze (Mich.) 122 N. W. 197; Adolay v. Miller (Ind.) 111 N. E. 313; Ewing v. Goode (Ohio) 78 Fed. 442; Zoterell v. Repp (Mich.) 153 N. W. 692; Lorenz Staloch v. Holm, 100 Minn. 276, 111 N. W. 264; State v. Housekeeper, 70 Md. 162; Friend v. Kramer, 236 Pa. 618, 85 Atl. 12.

"Where the evidence discloses no connection between the injury and the negligence charged, except a bare possibility that the former resulted from the latter, there is nothing for the jury, where it is also possible the injury may be due to other causes." Dame v. Laconia Car Co. Works, 71 N. H. 407, 52 Atl. 864; Reynolds v. Burgess Sulphite Fibre Co. 73 N. H. 126, 59 Atl. 615; McGraw v. Kerr (Colo.) 128 Pac. 870; Taylor v. Kidd (Wash.) 129 Pac. 406; Prestley v. Stafford (Cal.) 158 Pac. 776; Moore v. Teed & Seegarden, 3 Cal. 190; Sherwood v. Bab-

cock (Mich.) 175 N. W. 470; Hanson v. Harris (S. D.) 184 N. W. 262; Kelly v. Hollingsworth (S. D.) 181 N. W. 959.

Where the action is based upon alleged ignorance or want of skill on the part of the defendant, *the declaration must directly allege* that the defendant was negligent and unskilful. Barney v. Pinkham, 29 Neb. 350; Mayo v. Wright, 63 Mich. 52, 29 N. W. 832; Hills v. Shaw, 69 Or. 460, 137 Pac. 229; Baker v. Hancock, 29 Ind. App. 456; Martz v. Detweeter, 8 Watts & S. (Pa.) 376.

*Frank E. Fisk* and *Fisk, Murphy & Nash,* for respondent.

NUESSLE, J. The plaintiff, George Stoskoff, was an old man seventy years of age. He had a corn on the little toe of his right foot. He treated it himself for five or six weeks but it continued to get worse until it became so painful that finally on October 13th, 1919, he consulted the defendant, Carl A. Wicklund, a physician practising at Wildrose, North Dakota. The defendant, after examining the plaintiff's foot, told him that he had a soft corn on the inside of his little toe; that the condition had become so bad that it would be necessary to remove the toe. To this the plaintiff objected and went home. In a few days, however, he returned and submitted to the operation which was performed by the defendant. The defendant had the plaintiff removed to a hotel in the town of Wildrose where he was cared for by the landlord and his wife. The foot did not heal, and a few days afterward the defendant advised the plaintiff it would be necessary to submit to a further operation which the plaintiff agreed to. The defendant put the plaintiff under an anæsthetic and performed the operation, subsequently the plaintiff was again removed to the hotel.

It appears that at the time of the first operation, the plaintiff was suffering from arterio sclerosis and diabetes. The defendant after a cursory examination became aware of the arterio sclerosis, but gave no treatment to remedy the plaintiff's general physical condition prior or preparatory to the operations. The plaintiff remained in the hotel at Wildrose under the defendant's care and treatment from the 15th of October until the latter part of November. The foot refused to heal and gangrene developed. Finally the defendant advised the plaintiff that it would be necessary to amputate the foot, and suggested that as there were no proper facilities at Wildrose it would be necessary for him

to go elsewhere. The plaintiff went to Rochester, Minnesota, and entered the Mayo Clinic. There after receiving treatment on account of his diabetic condition, an operation was performed, but it was necessary at that time, in order to save the plaintiff's life, to amputate the leg above the knee.

The plaintiff testified that he was never at any time advised by the defendant as to his having arterio sclerosis or diabetes; that the defendant made no inquiries as to his age, weight, health, or physical condition either before or after the operations; that he was not advised by the defendant that it would be necessary to amputate the foot until a day or two before he went to Rochester; that the only treatment given to him by the defendant after the operation was an occasional dressing of his foot and the application of first, a black salve and later a powder; that no diet was prescribed for him, and no direction given for his care.

The defendant, on the other hand, testified, that he was aware of the arterio sclerosis prior to the first operation, and that when after the first operation the foot did not heal he made a further examination and further tests and learned of the diabetic condition of the plaintiff; that he prescribed necessary and proper medicine and attention; that he directed that the plaintiff be put upon the proper diet to remedy the diabetes; that at the time of the first operation there was necrosis of the tissue and bone of the little toe; that when after the operation the toe did not heal, the second operation was for the purpose of removing sloughing tissue so that there might be a better drainage and a process of healing begun; that he advised the plaintiff of his condition generally and specifically, told him within a day or two after the operation that it might be necessary to amputate the foot, and gave the plaintiff careful and prompt attention in every respect.

The plaintiff brings this action to recover on account of the negligence of the defendant as a physician in not properly treating, caring for, and prescribing for the plaintiff; he alleges that by reason of such negligence he suffered great physical pain and was compelled to and did submit to an operation for the amputation of his leg, and he prays damages on account of such negligence. The defendant denies any negligence on his part, pleads contributory negligence on the part of the plaintiff, and that the result complained of arose because of the plaintiff's physical condition prior to consulting the defendant. The

cause was tried to a jury; submitted on these issues; and the jury returned a verdict for the plaintiff in the sum of $5,748.60.

At the close of the plaintiff's case the defendant moved for a dismissal because of the asking of certain questions by the plaintiff, which defendant contended would necessarily result in a mistrial, and at the close of the whole case, defendant moved for a directed verdict on the ground of the insufficiency of the evidence to warrant a verdict for plaintiff. After the verdict was returned, the defendant moved for a new trial or for judgment notwithstanding the verdict, which motion was denied.

The matter is here on appeal from the judgment. The plaintiff specifies as grounds for reversal, first, the action of the trial court in denying his motion to dismiss; and second, the insufficiency of the evidence to sustain the verdict, contending that there is no evidence showing or tending to show any negligence on the part of the defendant in connection with his treatment of the plaintiff; that it affirmatively appears that the defendant used the ordinary and reasonable skill and judgment used by practitioners in practising medicine at that place under conditions as disclosed; and that the undisputed testimony shows that the results which the plaintiff has obtained and of which he complains were caused by his own physical condition prior to his consulting the defendant, and not by reason of any negligence or lack of skill or care in the treatment of his ailments.

The matters which the defendant relies upon as justifying his motion for a dismissal at the close of the plaintiff's case, and on account of which he predicates error by reason of the denial of that motion by the trial court, are based upon this portion of the record made just prior to the closing of the plaintiff's case, the defendant being on the stand for cross examination under the statute, Mr. Nash, attorney for the plaintiff, examining:

Q. Are you a member of the Northwestern Medical Association?
A. Yes, sir.
Q. Did you report this case in?
Objected to by the defendant as incompetent, irrelevant, and immaterial.
The court: Sustained.

Q. One of the purposes of that association is to protect doctors against malpractice actions.

Objected to by the defendant as incompetent, irrelevant, immaterial, highly prejudicial, and an attempt to bring prejudicial matters before the jury.

The court: Sustained.

Mr. Nash: I want the record to show that the question was a preliminary question to a perfectly competent question touching the credibility of this witness.

The court: Overruled.

The defendant contends that by the asking of the questions as set out above, the defendant was prejudiced in the eyes of the jury, even though objections to those questions were sustained; that the matters to which the inquiry was directed were clearly inadmissible, and that the sole purpose of the inquiry was to prejudice the defendant. There is much force to this contention on the part of the defendant. We are unable to conceive of any proper purpose that could have been attained thereby. The matter of the propriety and prejudicial effect of an examination or attempted examination of this character has been considered and passed upon by this court on several occasions heretofore. See First Nat. Bank v. Davidson, 48 N. D. 944, 188 N. W. 194; and Beardsley v. Ewing, 40 N. D. 375, 168 N. W. 791. In the case of Beardsley v. Ewing, this Court said:

"Where a fair trial of the issues in a damage suit is likely to be prejudiced by questions such as those pointed out, we are of the opinion that their correction lies largely in the discretion of the trial court. The trial judge, who has the advantage of the atmosphere of the trial, can best determine the extent of the threatened prejudice, and can take the necessary precautionary measures to insure a proper determination of the issues, even to the extent of granting a new trial. Then, too, the defendant, should not be given a free rein to speculate upon the verdict. If it is thought that the jury is prejudiced by reason of improper suggestions made during the trial, steps should be taken at once to secure another trial before another jury. That the interjection of such improper matter during the course of the trial is not, under all circumstances, reversible error, see Edwards v. Burke, 36 Wash. 107, 78 Pac.

610, 17 Am. Neg. Rep. 384; Shoemaker v. Bryant Lumber & Shingle Mill Co. 27 Wash. 637, 68 Pac. 380; Hammer v. Janowitz, 131 Iowa, 20, 108 N. W. 109, 20 Am. Neg. Rep. 324; Johnson v. Devoe Snuff Co. 62 N. J. L. 417, 41 Atl. 936, 5 Am. Neg. Rep. 191; De Mars v. Glen Mfg. Co. 67 N. H. 404, 40 Atl. 902."

The suggestion as therein made with respect to the proper course to be followed by the party aggrieved by such examination was exactly followed in this particular case. The defendant, immediately following the asking of the objectionable questions, directed the matter to the attention of the trial court, asked that a mistrial be declared, that the jury be dismissed, and that the cause be retried to a new jury. There was no attempt at speculation on his part. It cannot be urged that he has in any way waived his right to take every exception to the conduct of the plaintiff's counsel. Thereby this case is distinguished from the Ewing Case.

While it is true that the objections interposed to the questions complained of were sustained, yet by reason of that very fact they may have been and probably were the more prejudicial to the defendant. By objection the matter was particularly called to the attention of the jury. On the other hand, a party should not be deprived of his privilege to urge a valid objection because a greater prejudice might follow. He should not be subject to a possible penalty for insisting upon a proper regard for his rights. Rather the penalty, if penalty there be, should be visited upon the real party at fault. There is no question but that very wide latitude and discretion must be permitted the trial court, but not withstanding the trial court's determination in this particular matter we believe that the examination in question may have been so prejudicial in its effect that on account of the same a mistrial should have been declared.

There remains for consideration the second specification relied upon by the defendant, that is, the question of the insufficiency of the evidence to sustain the verdict. The defendant's contention is, in the first place, that there is no evidence sufficient to warrant the jury in finding negligence on account of the treatment accorded the plaintiff by the defendant; and second, that even though there is evidence to warrant such a finding that there is no evidence anywhere in the record which will warrant a finding that the proximate result of that negligence was the

loss of the plaintiff's leg by amputation; that for all that appears in the record it might have been necessary for the plaintiff to have had his leg amputated, even though he had received proper treatment from the instant that he first consulted the defendant.

We believe that on the whole record there is evidence which might warrant the jury in making its finding of negligence. Both plaintiff and defendant in the instant case are agreed upon the rule that a physician is held only to the exercise of the skill and learning of the profession generally in the community in which he practises. Applying that rule under the facts as shown, if the jury saw fit to give credence to the testimony of the plaintiff and his witnesses rather than to that of the defendant, they would be warranted in making such a finding of negligence. So far as our consideration of this matter goes, the rule is, and we must follow it, that where there is a conflict in the testimony as to those matters having a bearing upon the verdict of the jury, this court must, for the purpose of the appeal, regard the plaintiff's version as being the true one. See Beardsley v. Ewing, supra. On the record the question of negligence is one of fact for the jury, and their finding in that respect is conclusive.

As to the second contention of the defendant, that is, that even though there was negligence on the part of the defendant, nevertheless there is no evidence in the record to warrant a finding that the loss of the plaintiff's leg was the proximate consequence of that negligence, a different situation presents itself. The burden was upon the plaintiff to establish by a fair preponderance of the evidence those things essential to the recovery of a verdict. He must establish not only negligence on the part of the defendant, but also that the result obtained was the proximate consequence of that negligence. Has he sustained the burden?

After a careful consideration of the whole record we are of the opinion that neither the jury, the trial judge, nor this court could or can say from the evidence in the case that the loss of the plaintiff's leg is established to have been the proximate consequence of the defendant's negligence. Therefore, if the failure to establish that matter is vital to the plaintiff's verdict, there must be a reversal of the judgment.

The plaintiff predicates his claim for damages upon, first, the pain and suffering that he was caused by reason of the treatment administered to him by the defendant; and second, that as a consequence of

that treatment he was required to submit to the amputation of his leg. We believe as to the element of pain and suffering, that the record may justify a finding by the jury that the same was caused or enhanced by the negligence of the defendant. In that respect at least the plaintiff may have met his requirement as to proofs. The damages were fixed by the jury in the amount of $5,748.60. There is no claim on the part of the defendant that the damages so found are excessive. His contention is that the plaintiff is entitled to no damages on the record. Our view of the matter is that he may be, but we are doubtful if the evidence is sufficient to sustain the verdict as returned. We are certain that if the jury based their finding on the loss of the leg and the pain and suffering thereby entailed, the evidence is insufficient. In his charge to the jury the trial judge did not particularly specify the various elements of damage relied upon, or distinguish one from the other. Can we now say, the plaintiff, having been permitted to show that he in fact suffered the loss of his leg, and the jury having heard that testimony and made a general finding and fixed the plaintiff's damages, that the defendant was so prejudiced thereby as to warrant a reversal? It appears to us that we can and must do so. The jury were not advised that the proofs in this respect were not sufficient and that they might not assess damages on account of the loss of the leg. It is certain that, having heard the testimony as to the amputation of the plaintiff's leg, they must have taken the fact that he lost the leg and the pain and suffering necessarily attendant upon the amputation into consideration when fixing the damages. It was impossible for the trial court to say, and it is impossible for us to say, how much the jury, when reckoning the damage which the plaintiff suffered, apportioned on account of the various matters which they took into consideration or what matters they took into consideration when reckoning damages. Having the evidence of the loss of the leg before them, the only reasonable inference that can be drawn is that the loss of the leg was one of the elements of damage considered by them, and a very substantial one. It may have been the only one.

We must reverse the judgment for the reason as stated. Although defendant is not entitled to a judgment notwithstanding the verdict, he is entitled to a new trial. Judgment reversed and new trial ordered. Defendant to recover costs.

BIRDZELL, CHRISTIANSON, and JOHNSON, JJ., concur.

BRONSON, Ch. J. (specially concurring). I agree that the judgment should be reversed and a new trial granted only upon the grounds stated in paragraph 1, of the syllabus. I concur in the holding of the court as stated in paragraph 2 of the syllabus.