WILLIAM H. CRUE, PLAINTIFF IN ERROR, v. JANET CALDWELL, DEFENDANT IN ERROR.

1. Where a voluntary settlement has been made by a wife in favor of her husband and daughters, through a contract with her son, without reserving power of revocation, by which, in consideration of her conveying to him her undivided half interest in certain lands, the son gave his father a life estate in the entire land and pledged the whole property to secure a certain sum to each of his sisters after the father's death, and the wife has acquiesced in the situation made by the deeds and mortgage for twenty-five years after the transaction.   *Held*, that it was a settlement completely executed and differed in form only from a settlement by conveyance in trust without power of revocation reserved,

which cannot be annulled without the consent of all the *cestuis que trustent.*

2. A jury should be controlled in its verdict by a peremptory instruction from the court only where the testimony is of such a conclusive character as would compel the court, in the exercise of a sound legal discretion, to set aside a verdict, if one were returned, in opposition to such testimony.

On error to the Hudson County Circuit Court.

Prior to the 8th day of March, 1862, Janet Caldwell and her son, John, were seized in fee, as tenants in common in equal shares, of a lot of land situate on a corner of South Seventh street and Newark avenue in Jersey City.

By deed dated on that day, containing full covenants, Mrs. Caldwell, with her husband, Francis, conveyed her undivided half of that lot to the son, John, in fee.

By another deed, dated on the same day, John conveyed to his father the entire lot for the father's life, and, at the same time, made a mortgage of the whole property to his five sisters—Janet, the widow of David Brown; Margaret, the wife of Joseph Wellwood; Mary, Jane and Elizabeth—to secure to each of them the payment of $500 within six months after their father's death. This mortgage, among other things, recited that it was intended to secure to each of the sisters the payment of $500, which their mother intended to have left them at her death, and that Janet Caldwell and her husband had conveyed the lot to the mortgagor, John, and that he, in consideration of that conveyance, had agreed to pay the money as aforesaid.

The two deeds and the mortgage were drawn by the same conveyancer, at the same time, and each bore date on the 8th day of March, and was acknowledged on the 20th of March, and recorded on the 21st of March, in the same year.

After the execution of the papers, the mortgage was delivered to Janet Brown, one of the mortgagees, and it remained in her possession until after her father's death, when she put it in the hands of attorneys for collection.

In April, 1868, the daughter, Elizabeth Caldwell, married the plaintiff in error, William H. Crue, and in March, 1877, she died, and Crue was duly appointed the administrator of her estate.

Francis Caldwell died in 1885, and, in December, 1886, after a suit to foreclose the mortgage had been commenced, John Caldwell paid the mortgage off. Each of his living sisters received her $500, and William H. Crue, as his wife's administrator, received that which, by the terms of the mortgage, was payable to her.

In October, 1887, Janet Caldwell, who had survived her husband, brought suit in the Hudson County Circuit Court to recover from William H. Crue the portion of the mortgage money that had been paid to him.

The theory upon which she sought to maintain her suit was, that in 1862, when the deeds and mortgage were made, she was extremely ill, and in apprehension of immediate death, and that under such apprehension she caused the mortgage to be made to her daughters as a gift *causa mortis*, which her subsequent recovery revoked.

The suit was resisted, on the grounds that the mortgage was intended as payment to the daughters for services that they had rendered to their mother in assisting her to conduct a bakery, and, if that contention could not be sustained, and the mortgage was to be construed as a gift, that it was a perfected gift *inter vivos*, and not a gift *causa mortis*.

Several witnesses upon each side of the case were examined, and, after the testimony was concluded, the court expressed a desire to hear counsel, first upon the question whether the suit was maintainable in a court of law, and then upon the question whether the transaction was entered into by Mrs. Caldwell in anticipation of her speedy death. Counsel were then instructed to address the jury upon the question whether the mortgage was designed as a gift or as payment. After the jurors had retired to deliberate, they returned to the court and reported that they could not agree, and thereupon they were directed by the judge to render a verdict for the plaintiff.

For the plaintiff in error, *Voorhees & Cotter* and *Traphagen & Beekman.*

For the defendant in error, *Vredenburgh & Garretson.*

The opinion of the court was delivered by

THE CHANCELLOR.    This case may be disposed of upon the exception to the court's direction to the jury to return a verdict for the plaintiff, and the assignment of error thereon.

The direction must have been given upon the assumption that the mortgage to Mrs. Caldwell's daughters was a gift *causa mortis.*

To establish it as such a gift, it was necessary to show, not only that it was in fact a gift, but, also, that at the time it was given, Mrs. Caldwell apprehended the near approach of her death.    These facts were controverted.    The proofs concerning them were submitted to the jury, and it was after the jury had reported that it could not agree that the judge directed a verdict for the plaintiff.    The first question presented by the objection to this direction is, whether the judge was justified in taking the case from the jury.

It is well settled that a jury should be controlled in its verdict by a peremptory instruction only where the testimony is of such a conclusive character as would compel the court, in the exercise of a sound legal discretion, to set aside a verdict if one were returned in opposition to such testimony.    *Montclair* v. *Dana,* 107 *U. S.* 162; *Central R. R. Co.* v. *Moore,* 4 *Zab.* 824, 830; *Aycrigg* v. *New York and Erie R. R. Co.,* 1 *Vroom* 460; *Baldwin* v. *Shannon,* 14 *Id.* 596, 602; *Nuendorf* v. *World Mutual Insurance Co.,* 69 *N. Y.* 389.    Or, to put it more forcibly and more accurately, if the evidence be such that the court would set aside any number of verdicts rendered against it, the jury may be controlled.    *Baldwin* v. *Shannon,* 14 *Vroom* 596, 602; *Denny* v. *Williams,* 5 *Allen* 1, 5; *Brooks* v. *Somerville,* 106 *Mass.* 271, 275.

Testing the action of the trial court by this rule, it is not perceived that the evidence will justify its direction to the

jury.   Concerning the questions of fact in issue, it was clearly
conflicting and unsatisfactory.   Janet Brown and Joseph and
Margaret Wellwood testified that one night Mrs. Caldwell
was so ill that she was not expected to live, and that late in
the night Jacob R. Hardenburgh, a lawyer, was sent for, and
that he and Mrs. Caldwell and her son and husband pri-
vately transacted some business which the witnesses supposed
was the preparation and execution of the deeds and mortgage.
John Caldwell, on the other hand, testified that the papers
were executed when his mother was in the full enjoyment of
health, and that they were the outcome of his mother's earnest
desire and importunity that, in case she should die, her husband
should have a life estate in the land described in the papers,
and her daughters $500 each for their services in the bakery.
He said that the papers were changed several times before he
would consent to them.

Mr. Hardenburgh remembered that upon several occasions
he prepared papers for Mrs. Caldwell, but he failed to recall
that he ever drew any papers at her house late at night or
when she was ill.   Upon examining the deeds and mortgage,
he testified that he thought, judging from their appearance,
that they had been drawn in his office ; a word had been neatly
erased and the date of the certificates of acknowledgment had
evidently been left blank and afterwards filled in.   The lapse
of time between the date of the papers and the date of the
certificates of acknowledgment, twelve days, was another indi-
cation to his mind that the papers were not both prepared and
executed at one time.   He was permitted to state that if he
had been called late at night to the bedside of a person who
was supposed to be dying, he would have drawn a will instead
of two deeds and a mortgage.

Mrs. Caldwell, at the time of the trial, was seventy-eight
years old.

It is quite evident that all her answers could not have left
the impression that they were reliable.   In one place, under a
leading examination, she admitted knowledge of the execution
of the deeds and mortgage, and in another place she asserted

that when they were made she was not in a condition to transact business, and that she had no remembrance of either seeing or signing them. In another part of her examination she testified that she lacked memory. She did not anywhere assert that when the papers were made she feared immediate death. Upon that point her testimony is that *others* feared that she was dying, and that *she* thought it best to secure her husband and daughters, so that if she died the daughters would be paid for their work in the bakery and her husband would have a life estate in the property.

The testimony of each witness was subject to criticism, especially when viewed in the light of the documents produced, and the circumstances surrounding the case. The whole testimony was clearly of such a character as to produce different results in different minds. It was given twenty-five years after the transaction to which it related, and after Mrs. Caldwell, for that length of time, had acquiesced in the situation made by the deeds and mortgage. It was undoubtedly of such character that the questions to be determined by it should have been left to the jury.

But the court was also in error in assuming that the mortgage could be regarded as a gift *causa mortis*, which the donor's recovery revoked.

The deeds and mortgage were indisputably parts of a single transaction by which Mrs. Caldwell, without reserving a power of revocation, made a voluntary settlement in favor of her husband and daughters, through a contract with her son, by which, in consideration of the mother's conveyance of her undivided half of the property to him, he gave his father a life estate in the entire land and pledged the whole property to secure the payment of $500 to each of his sisters after his father's death.

The settlement was completely executed. It differs in form only from a settlement by conveyance expressly in trust without power of revocation reserved, which, when once perfectly created, cannot be annulled without the consent of all the *cestuis que trustent. Isham* v. *Delaware and Lackawanna R.*

*R. Co.*, 3 *Stock.* 227; *Gulick* v. *Gulick*, 12 *Stew. Eq.* 401; *Perry Trusts* 3104; 2 *Spenc. Eq. Jur.* 881; 2 *Story Eq. Jur.* 973.

Unless the entire settlement can be successfully assailed in equity and there set aside as the product of fraud, undue influence or mistake (*Garnsey* v. *Mundy*, 9 *C. E. Gr.* 243; *Perry Trusts* 104), the several parts of it must stand. One part cannot be severed from the whole. But, in an attack in equity, after the settlor has acquiesced for more than twenty-five years in the settlement, and after the terms of the settlement have been entirely fulfilled, success can hardly be expected.

The judgment below should be reversed.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Dixon, Garrison, Magie, Van Syckel, Brown, Cole, McGregor, Smith, Whitaker. 11.