THE NEWARK PASSENGER RAILWAY COMPANY, PLAINTIFF IN ERROR, v. FANNY BLOCK, DEFENDANT IN ERROR.

1. When a trial judge is requested to nonsuit or direct a verdict in the trial of an action to enforce a liability for negligence, his duty is to determine whether facts have been established by evidence from which negligence may be reasonably inferred; if the real facts are in substantial dispute, the case cannot be taken from the jury.

2. The rule requiring one exercising his lawful rights in a place where the exercise of lawful rights by others may put him in peril, to use such precaution and care for his safety as a reasonably prudent man would use under the circumstances, is the measure of duty for one who crosses a public highway on foot. He must use his powers of observation to discover approaching vehicles, and his judgment how and when to cross without collision, but his observation need not

extend beyond the distance within which vehicles moving at lawful speed would endanger him.    If obstacles temporarily intervene to prevent observation, he should wait until the required observation can be made.

3. Street cars propelled by electricity and running along land burdened only with the easement of a public highway, cannot be run at a rate of speed incompatible with the lawful and customary use of the highway by others with reasonable safety.

On error to the Supreme Court.

Fanny Block, the defendant in error, brought an action of tort against the Newark Passenger Railway Company, the plaintiff in error, in the Essex Circuit, to recover damages for an injury received from a car of the company running in a public street.

After the evidence was all in, counsel for the railway company requested the judge to direct a verdict in its favor.    The request was refused and exception was taken.

Other exceptions were taken to the charge and to refusals to charge as requested.

After judgment in favor of defendant in error, the cause was removed by writ of error to the Supreme Court, and error was assigned on the exceptions.    The judgment was there affirmed.

For the plaintiff in error, *Anthony Q. Keasbey* and *Edward Q. Keasbey*.

For the defendant in error, *Louis Hood* and *Samuel Kalisch*.

The opinion of the court was delivered by

MAGIE, J.    In support of the assignment of errors founded on the exception to the refusal of the trial judge to direct a verdict for plaintiff in error, it is insisted that the evidence (all of which is contained in the bill of exceptions) showed that there was no negligence on its part producing the injury for

which the action was brought, but that there was negligence on the part of the defendant in error producing or contributing to produce her injury.

In reviewing a judgment founded on a verdict directed by the trial judge after the whole evidence was in, this court declared that a jury should only be controlled in its verdict by a peremptory instruction when the testimony is of such a conclusive character as would compel the court, in the exercise of a sound legal discretion, to set aside a verdict in opposition thereto, or, as the learned Chancellor who delivered the opinion said, "to put it more forcibly and more accurately, if the evidence be such that the court would set aside any number of verdicts rendered against it, the jury may be controlled." *Crue* v. *Caldwell*, 23 *Vroom* 215.

This rule must furnish the test of the propriety of refusing a peremptory direction to find a verdict.

It has been questioned elsewhere whether, in actions to enforce a liability arising from negligence, the trial judge can withdraw from the jury, by nonsuit or direction for a verdict, the question of negligence, which is a mixed question of law and fact. In this state the power of the trial judge to nonsuit has been exercised and approved for many years in a long line of cases too familiar to need to be referred to. The power to direct a verdict is identical with and rests upon the same foundation as the power to nonsuit.

When, in such cases, the trial judge is requested to nonsuit, or to direct a verdict, his duty is, as was well expressed by Lord Chancellor Cairnes, in *Metropolitan Railway Co.* v. *Jackson*, *L. R.*, 3 *App. Cas.* 193, to say whether any facts have been established by evidence from which negligence *may be* reasonably inferred. If none, there is no case to go to a jury; but if from facts established negligence may reasonably and legitimately be inferred, it is for the jury to say whether from those facts negligence *ought to be* inferred.

In performing this function the trial judge must take care not to trench on the peculiar province of the jury to determine questions of fact, and must bear in mind that the question is

not whether he would infer negligence from the established facts, but whether negligence can be reasonably and legitimately inferred therefrom by the jury.

It follows that if the real facts have not been established by the evidence, but remain in substantial dispute, the trial judge must submit them, and the inferences to be drawn from those which the jury find established, to the determination of the jury. *Moebus* v. *Becker*, 17 *Vroom* 41; *Delaware, Lackawanna and Western Railroad Co.* v. *Shelton, ante p.* 342.

When this request was made it was obviously impossible for the trial judge to say what facts had been established. The evidence was contradictory to a degree unusual even in cases of this sort. It was impossible of reconciliation, and the real facts could only be determined by the jury settling the credit to be given to witnesses and weighing and comparing their variant testimony.

Under such circumstances it would have been error to withdraw the case from the jury.

The argument in behalf of the plaintiff in error is next addressed to an exception taken to the ruling of the trial judge upon a request to charge.

To make the request intelligible, it should be stated that the evidence of defendant in error, in respect to the mode in which she received her injury, was that she was struck and run over by a car of plaintiff in error, propelled by electricity and running on the westbound or north street car track in Springfield avenue, in Newark; that when struck she was crossing the avenue from south to north on a crosswalk at the intersection of Prince street with the avenue; that an eastbound car running on the south street car track had stopped upon the crossing and she had waited until it passed, when she went on, "looking both sides;" that not seeing any westbound car, she stepped on that track and was immediately struck and run over. It appeared by the evidence of witnesses called by her that the eastbound car stopped at the crossing, and went on, and the westbound car passed it, run-

ning at great speed and without giving signals; one witness estimated the speed at fifteen miles an hour.

The request in question was as follows: "If the jury believe the account of the plaintiff and her witnesses as to the fact that one car stopped at Prince street and passed the other below that street, it was the duty of plaintiff to wait long enough before crossing to allow the down-car to pass far enough for her to see whether another was coming, and if she neglected that duty she was guilty of contributory negligence and cannot recover, although the jury may believe that the up-car was going at an unusual rate of speed; the track being straight, and the car visible far enough to avoid it at any possible speed."

The judge declined to charge in that respect otherwise than he had charged, and this exception was taken.

The request is open to criticism as asserting a fact respecting the distance at which a car was visible, which was in dispute.

But it may be considered, however, as raising the question of the duty of the injured person under the circumstances above set out, and whether the request correctly states that duty.

It is first contended that the question of duty in this case is affected by the fact that defendant in error was crossing a highway along which cars propelled by electricity constantly ran. It is argued that the duty to take precaution against danger varies with the degree of peril; that the lawful use of a highway by such cars has, by reason of their running at greater speed, created additional danger to others using the highway, and that their duty in respect to such danger has thus been enhanced and enlarged. It is even insisted that the duty of persons traversing highways on which such cars run is like that imposed on persons passing along a highway where it is crossed at grade by a railroad operated by steam power.

It is not pretended, and the case does not show, that plaintiff in error has acquired by legislative grant any right to run

its cars in the highway at any rate of speed. Such a grant to use a rate of speed in a highway which would be destructive of its customary use by others, and incompatible therewith, would not be within legislative competency, except on compensation made to the owners of the land traversed by the highway.

Public highways have been acquired by dedication or condemnation for the use of the public in passing and repassing. Up to very recent times the public have used the rights of passing and repassing on highways, on foot or on horseback or in vehicles drawn by horses or other animals. When authority was granted to lay rails on highways and to run thereon cars drawn by horses for the carriage of passengers, it was long questioned whether such a use of the highway did not impose an additional burden upon the land, and whether such a grant could be made without compensation. It was finally settled by the weight of authority that the use of the highway by such cars was only a modification of the original use to which it had been devoted, and that no additional burden was imposed by such grant. That doctrine was adopted in this state. *Citizens' Coach Co.* v. *Camden Horse Railway Co.*, 6 *Stew. Eq.* 267. But it must be conceded that a grant of a right to use the highway in a mode incompatible with its customary use by the public would impose an additional burden, and could not be made without compensation.

The public has acquired such rights in the use of highways as the owners of the lands traversed thereby have yielded or been deprived of, and it may not be restricted in the enjoyment of such rights by a use of the highway inconsistent and incompatible therewith, at least without legislative grant. Whether the public rights thus acquired may be thus diminished or destroyed by legislative grant, when no compensation is made to landowners, is not a question involved in this case, and no opinion is intended to be expressed thereon.

As has been stated, no legislative grant in this case is shown. The contention of plaintiff in error rather takes this shape. It asserts that its cars, propelled by electricity, are

capable of being run at greater speed than other vehicles in the highway, and that the public convenience demands for passengers carried in such cars what is called "rapid transit," and it draws the inference that its cars may therefore be run at such speed as will satisfy this public demand, and that other persons lawfully using the highway in the customary modes must govern themselves and use the highway accordingly. Judicial opinions have been cited to us which appear to support these extraordinary propositions. I am unable to subscribe to the notion which, carried to its logical conclusion, would permit this company and other companies running cars in public highways, propelled by electricity, cables, &c., to run at any rate of speed which they may deem a demand, undefined and unrecognized by law, to require. The right to use the highway by such cars is not paramount to the rights of others in the customary use thereof; it must be used in a manner consistent with such rights of others. Such a paramount right as is contended for could not, in my judgment, be granted without compensation, and it surely cannot be acquired from a vague notion of a public demand for rapid transit.

There is no just analogy between the right of a street railway company running such cars longitudinally along the highway and the right of a railroad company running its trains across a highway at grade. The latter company acquires by condemnation a right to run its tracks over the lands covered by the highway, and so burdens it with an additional easement. By legislative grant it uses the easement so acquired in the passage of trains run at great speed, and to a certain extent the public easement of passage is, at such crossing, modified. No grant for the acquisition and use of such additional easement has been made to the street railways, and in the absence of such grant no right to run cars at excessive rates of speed exists. Their only right in this respect is to run at such rate as will not interfere with the customary use of the highway by others of the public with safety.

Let us now consider whether the request under consideration

correctly states the duty of defendant in error under the circumstances supposed.

The duty devolving on one using a highway for passage on foot varies with circumstances, which are infinitely various. It may be of one degree when the highway is a quiet country road, and of another degree when it is the crowded street of a great city. It may differ at different hours of the day, with respect to different vehicles and the differing rates of speed at which they are moving, and by reason of different opportunities of observation.

It is impossible, in my judgment, to classify these variant circumstances, and to lay down a precise rule as to the degree of care required in each class. In dealing with cases of this sort we must recur to the general rule, which requires one, in exercising his lawful rights in a place where the exercise of like rights by others may put him in peril, to use such precaution and care for his safety as a reasonably prudent man would use under the circumstances.

From this rule it may be said in general that one who passes on foot along a sidewalk or footpath of a highway must use his powers of observation in respect to other passers thereon, and a reasonable judgment to avoid collision. In crossing the roadway a foot passenger must likewise use his powers of observation to discover approaching vehicles, and a like judgment when and how to cross without collision. In the latter case, doubtless the degree of care required exceeds that required in the former case, not because the right of the foot passenger and the right of the driver of a vehicle differ, but because of the circumstances. The vehicle usually travels at a greater speed—it cannot be so quickly stopped or diverted from its course; a street car cannot deviate from its track; while the passer on foot may quickly stop, turn aside or even retrace his steps.

So it may also be generally said that if obstacles temporarily intervene to prevent observation, reasonable prudence would dictate delay until such observation as is requisite has been made.

But the request before us brings into question the extent to which one crossing the roadway on foot must extend his observation. Its claim is that such observation must be extended to any approaching car, no matter how distant. But this is obviously an exaggerated notion of the duty required. The most prudent man would never suppose himself required to thus observe. If such a rule of duty were adopted and practiced in a crowded city, the crossing of many streets would be barred to pedestrians for a great part of the time. The general rule to which we have recurred does not justify this excessive view of the duty required. It will require one crossing the roadway on foot to extend his observation only to the distance within which vehicles proceeding at customary and reasonably safe speed would threaten his safety.

Under this rule the defendant in error should doubtless have waited until she could have observed any westbound car which, traveling at customary and reasonably safe speed, might imperil her in crossing. But she was not bound to delay until she could have seen any car on that track at any distance coming with excessive and dangerous speed.

The charge was ample and correct on this subject, and the instruction asked for was properly refused.

The trial judge was further requested to charge that any one approaching a crossing must take notice of it and exercise a reasonable measure of care to avoid contact with the moving car, and "if by looking the plaintiff could have seen and so avoided an approaching car she cannot recover."

The request was not refused, but the trial judge said that he had "charged substantially according to his understanding of the law on that subject." An exception was then taken to the charge so far as it did not embrace "that secondary proposition."

Such an exception does not draw into review an omission in the charge. If counsel conceived that a pertinent proposition of law had been omitted, he should have specifically requested the desired instruction and excepted to a refusal.

If the proposition in question had been requested and refused, I think there would have been no error.   It is a proposition applicable to the crossing of the highway by the lines of a steam railroad.   It is inapplicable to the crossing of a street railway, the cars on which must not exceed such speed' as will permit the lawful, customary use of the highway by others with reasonable safety.   Prudence doubtless requires one about to cross a railroad track to use his eyes to observe any approaching car within his vision.   But, as has been shown, prudence does not require one crossing the track of a street railway to extend his observation to the whole line of track within his vision, but .only to such distance as, assuming the required care in their management, approaching cars would imperil his crossing.

Other requests to charge the judge declined to give otherwise than already given.

The charge correctly stated the law in the particulars covered by these requests, and there was no error in declining to repeat in other language the doctrines already laid down as law.

The remaining exceptions are to portions of the charge which, it is urged, tended to improperly affect the jury.

But the charge imposed on the jury in the plainest terms the duty of deciding the disputed questions of fact and settling the inferences to be drawn therefrom.   When that is done, comments or even expressions of opinion by the judge upon the evidence are not open to exception.   *Engle* v. *State,* 21 *Vroom* 272, and cases cited.   I may add that if the rule were different the language of the charge is not, in my opinion, open to any criticism of this sort.

No error being found, the judgment below should be affirmed.

*For affirmance*—THE CHANCELLOR, ABBETT, LIPPINCOTT, MAGIE, VAN SYCKEL, BOGERT, BROWN, CLEMENT, SMITH.   9.

*For reversal*—None.