## SAMUEL T. ADAMS v. THE CAMDEN AND SUBURBAN RAILWAY COMPANY.

### Submitted March 24, 1903—Decided June 15, 1903.

1. Plaintiff's driver was driving, at midnight, a team of horses attached to a loaded truck wagon, along the public road, upon the left-hand track of defendant's street railway, when he was met by one of defendant's cars moving on that track. In turning to his right, to avoid that car, he drove upon defendant's right-hand track, where another of defendant's cars, approaching from the opposite direction, overtook and ran into the back of his wagon, causing injury. He testified that, when he "pulled off" on the right-hand track, he looked back, and there was no car in sight, and that no bell was sounded nor notice given before the collision. The motorman in charge of the colliding car, in his testimony, made contradictory statements respecting the distance from him at which he first saw the horses "pulling over" on the track in front of him, and admitted that he gave no signal. *Held*, that the trial judge properly refused to direct a verdict for the defendant.

2. The right of street railway companies to use the highways, by their cars, is not superior to the rights of others in the customary use thereof, and it is not an act of negligence, *per se*, for the driver of a carriage, whether of burthen or pleasure, in passing over the public roads of this state where the tracks of any street railway company may be laid, when either met or overtaken by the cars of such company, to keep to the right upon other tracks of said company, even though such carriage, by turning to the left, might have avoided both meeting and being overtaken by the company's cars.

3. The defendant was *bound* to take notice that the law required other carriages or vehicles using the parts of the highway covered

by its car tracks, upon meeting its cars coming from an opposite direction, to keep to the right, except it was perilous to do so; and to control its overtaking cars in anticipation that such other carriages might so turn upon its car tracks, in obedience to the law, at any instant; and it was the duty of the motorman of the colliding car in this case to use reasonable care to observe any vehicle ahead of him, and to govern his car so as to prevent collision. Whether he used such care or not was a question for the jury to determine from the evidence.

On error to the Supreme Court.

For the plaintiff in error, *Joseph H. Gaskill* and *Nelson B. Gaskill.*

For the defendant in error, *Henry S. Scovel* and *William T. Boyle.*

The opinion of the court was delivered by

VREDENBURGH, J. The injury for which the plaintiff recovered a verdict below for compensatory damages to his property, resulted from a collision with defendant's passenger car. The plaintiff's driver, who was in charge of his team of horses, attached to a loaded truck wagon, was proceeding slowly upon the public highway, called the "Moorestown turnpike," in the direction of Camden city, at midnight on October 15th, 1901, along the left-hand track of defendant, when he was met by a passenger car of defendant coming towards him on that track. In turning to his right to avoid that car he drove upon defendant's right-hand track, and his wagon had, to use his expression, "just dropped" in that track when another of defendant's passenger cars, moving on the latter track in an opposite direction, came swiftly up behind him, overtook and ran into the back end of his wagon. The wagon was badly broken, one of the horses was killed, and other damage was done as the result of the collision. The driver testified that when he "pulled off" he looked back and there was no car in sight, and that no bell was sounded nor notice given before the car struck him. The principal ground taken by

the plaintiff in error (and, indeed, the only one deserving attention) for a reversal of the judgment entered upon the verdict is that the trial court should have directed a verdict for the defendant below. This contention assumes either that the evidence had demonstrated that the driver of the team was guilty of such contributive negligence as to legally defeat a right of recovery or that defendant had been guilty of no negligence in the operation of the colliding car productive of the injury.

As to the question of the contributive negligence of the driver, it is argued by the plaintiff in error that his act in driving upon the right-hand tracks of defendant was conclusive evidence of such negligence. But I think his act in following the "law of the road" by turning to the right, instead of to the left (in the absence of notice of particular danger on his right) cannot be said to have been negligent, *per se.* On the contrary, he but followed the express direction of our statute. The explicit command of our Road law upon that head seems to have escaped general observation. Its pertinent language is that "drivers of carriages * * * whether of burthen or of pleasure, using any of the turnpike or public roads in this state, when met by another carriage * * * shall keep to the right, and when overtaken by a carriage * * * shall likewise keep to the right, so as in both cases to permit such carriages * * * either met or overtaken to pass free and uninterrupted." *Gen. Stat., p. 2823, § 91.* A subsequent part of this law subjects the person disregarding its command to a money forfeiture in addition to an action of damages. The more specific insistment of the counsel for the plaintiff in error in this regard is that this driver was guilty of negligence because, having room on his left hand to pass the car he met, that being an (assumed) place of safety, he was bound to drive there, instead of to the right, that being an (assumed) place of danger, because of the existence of the right-hand track. But this contention seems groundless in view of the above-quoted law and of the decisions of our courts. If the driver had turned to the left he would have taken the risk of other carriages (which

in the night he might have been unable to discern) meeting and colliding with him while they were rightfully on that side. The recent decision of this court of *Hughes* v. *Camden and Suburban Railway Co., 36 Vroom* 203, where the facts resemble the case at bar, makes extended reasoning upon this subject here uncalled for. There the driver, who was on the right-hand track when overtaken by a car on that track, turned to the left instead of to the right, and was struck by an inbound car and injured, and a judgment of nonsuit below had been rendered against the injured plaintiff. This court, upon error brought, reversed that judgment, and, in the opinion written by the present Chancellor, in dealing with this feature of the case, he said: "If it was perilous to go to the right, and reasonable prudence required, he could go to the left, notwithstanding the inbound track of the defendant was there maintained. For reasons of safety, a traveler may use any part of a highway. * * * If he uses a highway, he may assume that others using it, including trolley car companies, will use it with a due regard to his rights. Upon the evidence, it was for a jury to say whether there was danger in turning to the right such as a traveler, in the exercise of reasonable prudence, would avoid." In the case at bar the trial judge committed no error in leaving the question to the jury. In giving expression to this rule—so important to the public under the dangerous conditions of travel now existing —he instructed the jury as follows, viz.: "Each user of the highway must use reasonable care to avoid accidents. * * * Therefore, the plaintiff, or his son, who was driving this team, was also obliged to use reasonable care to avoid this or any other accident. Whether that implies that he should turn out to the left or to the right; whether it implies that he should have stopped and looked around to have seen the motor car; whether it was coming; whether he would be apt to get in the way of it, are all matters of fact to which you must apply the law." The plaintiff in error certainly has no reason to complain of this instruction. It was, it seems to me, more favorable to the company than the judge might, without error, have expressed it. The motor car company

was bound to take notice that the law required other carriages (using the parts of the highway covered by its tracks) upon meeting its cars coming from an opposite direction, to keep to the right, except it was perilous to do so, and to expect that such other carriages might so turn upon its right-hand tracks at any moment, in obedience to the law. It was the duty of the motorman to use reasonable care to govern the speed and motion of his car in accordance with the necessities which such a situation might at any instant create. The relative rights of the users of the public roads, in which street cars are liable to be swiftly propelled by electricity, was fully and learnedly considered by the present Chancellor in this court in the case of *Newark Passenger Railway Co.* v. *Block,* 26 *Vroom* 605, and he there concludes that the right of such street railways to use the highway by their cars is not "paramount to the rights of others in the customary use thereof," and that such use must be "in a manner consistent with such rights of others." Under these and other approved deliverances of this court, and the directions of our statutes, the plaintiff's driver was justified in keeping to the right upon the unoccupied tracks of defendant, after exercising reasonable prudence to observe and avoid any overtaking car, moving so dangerously near to him that it could not be controlled effectively by a motorman using reasonable care in its operation. See, also, cases of *Camden, &c., Railway Co.* v. *Preston,* 30 *Id.* 264; *Consolidated Traction Co.* v. *Haight, Id.* 577; *Shelly* v. *Brunswick Traction Co.,* 36 *Id.* 639.

It is evident that this part of the case belonged to the province of the jury, and that the judge properly left it there.

As to the second branch of the contention of the plaintiff in error, it will be sufficient to add that it is clear that the question of the negligence of this company was also properly left to the jury to determine. The long-settled rule of law in this state is that if from the facts established negligence may reasonably and legitimately be inferred, it is for the jury to say whether from these facts negligence ought to be inferred, and that if the real facts have not been established by the evidence, but remain in substantial dispute, the trial judge

must submit them, and the inferences to be drawn from those which the jury find established, to the determination of the jury.

The motorman who had charge of the colliding car, in one portion of his evidence, admitted that he first saw the team of horses "pulling over on the track in front of him when they were a square away" from him. Subsequently he testified that he was about a "car and a quarter's" length away when he first saw the horses, and that he gave no signal at any time before the collision, because he hadn't time to give any signal. Which of these two contradictory statements should be relied upon was a problem for the jury alone to decide. If the jury believed the former, they were justified in finding that he had been negligent not only in failing to give a signal of the coming of his fast-moving car, but also, and whether he signaled or not, had been clearly negligent in not keeping his car under efficient control when he first saw the team ahead of him, a square distant, turning upon his track.

The judgment below should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, FORT, GARRETSON, HENDRICKSON, PITNEY; SWAYZE, BOGERT, VREDENBURGH, VOORHEES, VROOM.   13.

*For reversal*—None.