KATHARINE VROOMAN, ADMINISTRATRIX, &c., DEFENDANT IN ERROR, v. THE NORTH JERSEY STREET RAILWAY COMPANY, PLAINTIFF IN ERROR.

Argued March 18, 1904—Decided November 14, 1904.

1. The driver of a truck is not guilty of negligence, as a matter of law, in attempting to cross a street railway track in front of a trolley car five hundred and fifty feet away, which is approaching him at a very great rate of speed; he has the right to assume that the car is furnished with appliances to reduce speed and to stop, and with a motorman to make use of such appliances, and that the car will not continue to run in violation of the law limiting the speed of vehicles in public streets to that which is compatible with a safe use thereof by other vehicles.

2. In an action for damages resulting from an injury caused by negligence, it is the duty of the trial judge, when requested to nonsuit or direct a verdict, to determine whether any facts have been established by evidence from which negligence may be reasonably inferred; if the real facts have not been establshed by the evidence he must submit them to the jury.

In tort.    On error to the Supreme Court.

For the plaintiff in error, *James B. Vredenburgh.*

For the defendant in error, *Walter L. McDermott.*

The opinion of the court was delivered by

Vroom, J. This case, together with those of George J. Lecher and Samuel B. Lowrey, against the same defendant, were tried together at the Hudson Circuit, all having arisen out of the same accident.

The action of Katharine Vrooman, administratrix, &c., was brought to recover damages for the death of her husband, Henry Vrooman, caused by injuries received in a collision between a truck, driven by him, and a trolley car of the North Jersey Street Railway Company; that of George J. Lecher, the owner of the horses and truck hired by Vrooman, for the killing of one horse, the injury to the other, and the damages to the truck; that of Samuel B. Lowrey, a helper of Vrooman, for injuries received.

The accident occurred on the 13th of June, 1902. Vrooman and his helper, Lowrey, had in this truck taken to Newark from New York, a load of watermelons. In the afternoon they were returning to Jersey City along Communipaw avenue. On this avenue there is a double-track trolley road of the defendant company. About half-past four, when nearly opposite a road-house called Glendale Park, where drivers frequently stop to water their horses, Vrooman started to cross the avenue diagonally to go to the hotel. He had been driving on the southerly side of the street, some of the witnesses saying that the truck and horses were on that side,

others that they were partly on the eastbound track (which is on the south side) and partly in the roadway.

According to the testimony, a trolley was approaching on the westbound track in the direction of Newark. Lowrey, who was in the truck with the deceased, said that when·he first saw the car coming, at the point where they were about to cross to go to Glendale Park, it was six hundred feet away; that after the horses had been turned in a slanting direction toward the hotel and had gotten in the middle of the track, the car was about two hundred and fifty feet away and coming at so great a speed that, seeing his danger, Vrooman started to back off the track and turned the horses, the car was seventy-five feet away, and before he could get off the track they were struck. Regarding the rate of speed of the car, he testified that it could not go any faster, in fact there was little or no dispute that the car was going at a very high rate of speed. There was a decided difference in the testimony as to the distance between the car and the truck when the driver first started to cross, varying from six hundred and five hundred and fifty feet, on the part of the plaintiff, and thirty, forty and fifty feet on the part of the defendant. After striking the horses, the car went on, according to some witnesses, about a block and a half past the point of collision, according to others, one hundred and fifty feet; the motorman testifying, however, that he brought it to a stop in twenty-five or thirty feet.

At the close of the plaintiff's case a motion to nonsuit was denied, as was also a direction for a verdict for the defendant at the close of the case. The verdict was for the plaintiff.

The two assignments of error relied upon by the plaintiff in·error were the refusal to nonsuit and the refusal of the trial judge to direct a verdict for the defendant.

I think the refusal to nonsuit was entirely justified. The contention on behalf of the plaintiff below is that the plaintiff's intestate was guilty of contributory negligence in that the truck, driven by him, turned suddenly diagonally across, in front of and towards a rapidly approaching car. Manifestly,

in the state of the evidence at the close of the plaintiff's case, a nonsuit could not be granted. It must be conceded that the rights of the truck and the car on this public street were equal with the exception that, because the car could not deviate from its tracks, other vehicles must give way to them when there is occasion for them to pass. But neither the driver of the truck nor the company could drive their vehicles at a rate of speed incompatible with the safe and customary use of the street by other vehicles and foot passengers. *Consolidated Traction Co.* v. *Lambertson,* 30 *Vroom* 297.

If, as appeared from the evidence, the driver of the truck commenced to turn across the track when the car was five hundred and fifty feet away, he had, under the decision in *Consolididated Traction Co.* v. *Lambertson, supra,* the right to assume that the approaching car was furnished with appliances to reduce speed and to stop, and with a motorman to make use of such appliances, even though it was coming at a great rate of speed; and it certainly would not under those circumstances have been within the province of the trial judge to take from the jury the question of whether the motorman was guilty of negligence in thus operating his car on this street, and clearly it was not his duty to say that the driver of the truck was guilty of negligence which contributed to the accident.

There is no basis for the contention of the plaintiff in error that the evidence made out such a clear case of contributory negligence that no reasonable person can differ about it, and that for that reason the case should have been taken from the jury. As said by Mr. Justice Lippincott, in *Consolidated Traction Co.* v. *Reeves,* 29 *Vroom* 576, "if from the facts in evidence two inferences or conclusions can be reasonably deduced, one favorable to the plaintiff and the other against him, a question then is presented which conclusively calls for the opinion of the jury. This principle is alike applicable whether negligence as a proximate and sole cause of the injury has been established against the defendant or not." Citing *Pennsylvania Railroad Co.* v. *Matthews,* 7 *Id.* 531; *Bahr* v. *Lombard, Ayres & Co.,* 24 *Id.* 233, and other cases.

It remains next to be considered whether at the close of the case the evidence of the defendant was of such a character as to require the trial judge on the whole case, as requested by defendant, to direct a verdict in its favor. In the case of *Newark Passenger Railroad Co.* v. *Block*, 26 *Vroom* 605, in this court, Mr. Justice Magie quotes approvingly from the opinion of Lord Chancellor Cairns in *Metropolitan Railway Co.* v. *Jackson*, 3 *App. Cas.* 193, that the duty of the trial judge, when requested to nonsuit or direct a verdict, is to say whether any facts have been established by evidence from which negligence *may be* reasonably inferred. If none, there is no case to go to the jury; but if from the facts established negligence may be reasonably and legitimately inferred, it is for the jury to say whether from these facts negligence ought to be inferred. And he then adds (at *p.* 607) : "In performing this function the trial judge must take care not to trench on the peculiar province of the jury to determine questions of fact, and must bear in mind that the question is not whether he would infer negligence from the established facts but whether negligence can be reasonably and legitimately inferred therefrom by the jury. It follows that if the real facts have not been established by the evidence but remain in substantial dispute, the trial judge must submit them and the inferences to be drawn from those which the jury find established to the determination of the jury."

For the trial judge to have said, when this request to direct a verdict for the defendant was made, that the facts of the case had been established, would have been an impossibility. In no way could the evidence be reconciled, that of the defendant being of such a character as to flatly contradict the case made by the plaintiff, so that the real facts could only be determined by the jury.

The other assignments of error were not pressed by the plaintiff in error, but I am satisfied, after examination, that there was no error in the charge in the respects referred to in said assignments.

No error being found, the judgment below should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM. 8.

*For reversal*—GREEN. 1.