DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

# STATE OF NEW JERSEY.

## MARCH TERM, 1910.

---

KATHARINE A. HIGGINS, DEFENDANT IN ERROR, v. PUBLIC SERVICE RAILWAY COMPANY, PLAINTIFF IN ERROR.

Argued March 17, 1910—Decided June 20, 1910.

1. Plaintiff, desiring to become à passenger upon an eastbound electric car upon defendant's Montgomery street line in Jersey City, waited upon the northerly side of the street until such a car came into view about five hundred feet away; she saw the car coming, but could not tell at what speed; at the same time a westbound car was slowing down to a stop opposite to where she stood; she started to cross the street, was obliged to wait for the westbound car, then starting again, to pass her, and she then walked behind this car and passed upon the eastbound track, and as she was about to step from the further rail of that track she was struck by the eastbound car; there was evidence tending to show that this car was running at excessive speed, estimated as high as thirty miles per hour, that the motorman was not keeping a careful lookout, had not his car under control, and failed to ring his warning bell; from the evidence the jury might reasonably infer that the noise of the eastbound car was drowned by the noise of the westbound car, then gathering speed, that the plaintiff before leaving the westbound track made an observation by looking up the eastbound track for a considerable distance, and far enough to have made it safe for her

471

to cross except for the high speed of the eastbound car, and that she (having no notice of that excessive speed) went forward in reliance upon the observation thus made. *Held*, that the question of her contributory negligence was properly submitted to the jury.

2. *North Jersey Street Ry. Co.* v. *Block*, 26 *Vroom* 605, and *Consolidated Traction Co.* v. *Glynn*, 30 *Id.* 432, followed.

3. *Eagen* v. *Jersey City, &c., Ry. Co.*, 45 *Vroom* 699; *Hageman* v. *North Jersey St. Ry. Co., Id.* 279; 46 *Id.* 939; and *Shuler* v. *North Jersey St. Ry. Co., Id.* 824, distinguished.

On error to Hudson County Circuit Court.

For the plaintiff in error, *Edwards & Smith*.

For the defendant in error, *Warren Dixon*.

The opinion of the court was delivered by

PITNEY, CHANCELLOR. The plaintiff recovered a verdict and judgment for damages by reason of personal injuries sustained by her in a collision with an electric street railway car operated by the defendant company. Reversal is asked because of the refusal by the trial judge of defendant's motions for nonsuit and for direction of a verdict. These motions were based solely upon the ground of contributory negligence.

The occurrence took place in the daytime, on Montgomery street, in Jersey City. This street runs approximately east and west, and there are double tracks, upon which cars run, of course in opposite directions. Factory street comes into Montgomery street from the north, but does not extend beyond it. Florence street crosses Montgomery street about two hundred feet to the eastward of Factory street. Cornelison avenue crosses Montgomery street about five hundred feet west of Factory street. The land on the southerly side of Montgomery street, extending from Cornelison avenue to Florence street, is unimproved, and its surface lies below the street level. There is no sidewalk upon the southerly side of Montgomery street at this place.

Plaintiff, a woman of mature years, had been visiting her brother at his home on the northeasterly corner of Montgomery

and Factory streets. About the middle of the afternoon she left the house together with her brother and his wife and child, who intended to take a westbound car, while the plaintiff intended to take an eastbound car.

The parties waited together upon the sidewalk on the northeast corner of Factory and Montgomery streets until a westbound car appeared, slowed down, and stopped at Factory street. Mr. and Mrs. Higgins and the child proceeded to board it. While this car was slowing down, an eastbound car was observed at or about Cornelison avenue, and the plaintiff's attention was called to it. She started to cross the street, but was obliged to wait a brief space for the slowly-moving westbound car to pass her, and she then walked behind this car and passed upon the eastbound track, and as she was about to step from the further rail of that track she was struck by the eastbound car. There was evidence justifying the inference that this car was running at an excessively high rate of speed, that it was not under control, that it gave no warning of its approach by ringing a bell, and that the motorman was not keeping a reasonably careful lookout for persons crossing the street. The speed of the car was estimated as high as thirty miles an hour. There is a descending grade from Cornelison avenue to Factory street. The motorman testified that he was "coasting." The nature of the plaintiff's injuries tended to show that the impact of the collision was quite severe. And there was testimony to the effect that she was hurled, or partly hurled and partly carried, for a distance of sixty feet down the street, and that the car ran more than two hundred feet before being brought to a stop.

Plaintiff was found unconscious, and remained so for a long time. She testified that her memory of events from the time she left the sidewalk for the purpose of crossing the street until a time several days later was entirely obliterated.

The evidence was clear and undisputed that she saw the eastbound car approaching before she started to cross the street. She herself testified that while she stood upon the sidewalk, and when the westbound car was so near that she could not cross in front of it, she saw the eastbound car com-

ing, and that it was at or about Cornelison avenue—a distance, as already mentioned, of about five hundred feet. She could not tell the speed of this car, but knew that it was coming towards her. She thereupon started across the street as soon as the westbound car was out of her way; it being necessary to cross both tracks and reach the southerly side of the roadway in order that she might enter the car from that side.

Naturally, and unavoidably, her view of Montgomery street to the west was cut off while she passed behind the westbound car. The charge of contributory negligence is rested mainly upon the insistence that she ought to have looked up the street again after she passed beyond the point where the westbound car obstructed her view.

It is also suggested, rather than urged, that the loud noise made by the eastbound car (concerning which there was clear and undisputed evidence) was sufficient to warn the plaintiff of its near approach if she had been properly using her senses. But the jury might reasonably infer that this noise was merged in the noises made by the westbound car, just then gathering speed, so as to convey no separate impression to the plaintiff's ear. Therefore, whether the noise was such as to give her adequate warning was merely a jury question.

As to the other point, we think it does not conclusively appear that after passing behind the westbound car the plaintiff failed to look to the right to observe the eastbound track for a sufficient distance to safeguard her against a car approaching thereon at customary and reasonably safe speed. There is no clear evidence upon the subject. Her own failure to testify about it is attributed to loss of memory, as already mentioned. The only witness who appears to have had plaintiff at the moment under observation was a Mrs. Coleman, who was looking from the window of a room in the upper part of a house on the northerly side of the street, and who was unable to say whether plaintiff looked or not. The mere fact that plaintiff was struck by the car is not conclusive proof that she did not, before stepping upon the eastbound track, look up the street for a reasonable distance. For, according to the evidence

most favorable to her, the eastbound car, at the time she may reasonably be presumed to have so looked, was not yet within the range of her observation if she confined her observation to the distance within which a car coming at reasonable speed would endanger her safety.

It is argued that plaintiff was bound to choose a time and place for making this observation so as to render the observation effective; that she was bound to wait until the westbound car had gone so far away that she could look for any required distance up the eastbound track. The law, however, does not require the traveler to insure himself against the dangers that beset him through the possible negligence of others; it only requires that he exercise reasonable care for his own safety; and, where looking and listening for danger are called for, the law only requires that he exercise reasonable care to select the time when, and the position from which, the observation shall be made. *Conkling* v. *Erie Railroad Co.,* 34 *Vroom* 338, 342.

In the case before us, the jury might reasonably infer that the plaintiff before leaving the westbound track made an observation by looking up the eastbound track; that at the time she thus looked the westbound car had proceeded far enough on its way to give her a view for a very considerable distance along the eastbound track; far enough, indeed, to have made it safe for her to cross except for the very high speed of the eastbound car; and that she (having no notice of that excessive speed) went forward in reliance upon the observation thus made.

Upon that state of facts, the decision of this court in *Newark Passenger Railway Co.* v. *Block,* 26 *Vroom* 605, is a controlling decision in her favor. There the plaintiff was struck and run over by an electric car running on the westbound or northerly track in Springfield avenue in Newark; when struck she was crossing the avenue from south to north on a crosswalk at the intersection of Prince street with the avenue; an eastbound car running on the southerly track had stopped upon the crossing, when she went on "looking both sides;" not seeing any westbound car, she stepped upon that track and

was immediately struck and run over. It appeared by the evidence of other witnesses that the eastbound car stopped at the crossing and went on, and the westbound car passed it running at great speed and without giving signals; one of the witnesses estimated the speed at fifteen miles per hour. The trial judge was requested to instruct the jury that it was the duty of the plaintiff to wait long enough before crossing to allow the eastbound car to pass far enough from her to enable her to see whether any car was coming, and if she neglected that duty she was guilty of contributory negligence and could not recover, although the westbound car was going at an unusual rate of speed; the track being straight and the car visible far enough to avoid it at any possible speed. This court held that the request was properly refused. The reasoning that led to this conclusion was as follows: that the law requires that in crossing a roadway a foot-passenger must use his powers of observation to discover approaching vehicles and a reasonable judgment when and how to cross without collision; that the degree of care required in crossing the roadway exceeds that required in passing along the sidewalk, not because the right of the foot-passenger and the right of the driver of a vehicle differ, but because the vehicle usually travels at a greater speed and cannot be so quickly stopped; if a street car, it cannot deviate from its track; while the passer on foot may quickly stop, turn aside, or even retrace his steps; that it may be generally said that if obstacles temporarily intervene to prevent observation, reasonable prudence would dictate delay until such observation as is requisite has been made, but the claim that such observation must be extended to any approaching car, no matter how distant, involves an exaggerated notion of the duty required of the foot-passenger; that if such a rule of duty were adopted and practiced in a crowded city the crossing of many streets would be barred to pedestrians for a great part of the time; *that the law requires one crossing the roadway on foot to extend his observation only to the distance within which vehicles proceeding at customary and reasonably safe speed would threaten*

*his safety;* that the plaintiff in the case *sub judice* should doubtless have waited until she could have observed any westbound car which, traveling at customary and reasonably safe speed, might imperil her in crossing; but she was not bound to delay until she could have seen any car on that track at any distance coming with excessive and dangerous speed.

In that case, the foot-passenger had no knowledge whether a car was or was not coming along the further track. In the present case the plaintiff, before she left the northerly sidewalk, saw that the eastbound car was coming, but under the circumstances we think this makes the case the better for her. For when she thus saw the car it was about five hundred feet away. She testified that she did not observe how fast it was coming. This is not incredible, for it is a matter of common knowledge that one standing in or near the path of approach of a moving vehicle cannot readily estimate its rate of speed. The event proved that even after the detention occasioned by waiting for the westbound car, she almost succeeded in crossing the street in safety; for she was struck just as she was stepping from the furthest rail. Accepting the evidence most favorable to her, that the eastbound car covered the five hundred feet at the rate of thirty miles per hour, and supposing the jury to find that fifteen miles per hour was a reasonable limit of speed that the car should not have exceeded, and to find that the plaintiff was not called upon to anticipate any greater speed than this, two results follow: first, that the plaintiff exercised a reasonable judgment in undertaking to cross the street at the time she did, for upon what appeared to her she could cross before the car would come within two hundred and fifty feet of her; and secondly, that while she was waiting for the westbound car to clear her view of the eastbound track, and while she was looking up that track, she had reasonable ground for believing the eastbound car was still a good deal more than two hundred and fifty feet distant, as it would have been had its rate of progress been such as she might reasonably attribute to it in the absence of notice of its extraordinary and excessive speed.

In *Consolidated Traction Co.* v. *Glynn,* 30 *Vroom* 432, the plaintiff was run over by an electric car while crossing a city street on foot. He saw the car at a distance of more than three hundred feet, and waited two or three seconds, and then proceeded to cross without looking again for an approaching car, and was struck before he succeeded in crossing. It was held to be a question for the jury whether the plaintiff, in the exercise of reasonable prudence and caution, should have apprehended that the car was coming at so high a rate of speed that it would reach him before he cleared the tracks, and to determine whether a prudent man, with the right to presume that the company would exercise due care on its part, would have proceeded to cross the street under the circumstances.

In that case, it is true, the evidence showed that the motorman saw or might have seen the plaintiff intending to cross; while in the case before us, the motorman's view of the plaintiff was interrupted by the intervening westbound car, as the plaintiff presumably knew. But this does not, we think, prevent the application of the Glynn decision to the present case, for the plaintiff might reasonably assume that the motorman would see her as soon as the westbound car passed on, and still have time to check the speed of his car if necessary.

In *Bauer* v. *North Jersey Street Railway Co.,* 45 *Vroom* 624, the plaintiff, a girl twelve years of age, undertook to cross a city street on which there were double trolley tracks; while crossing she awaited the passing of an eastbound car; a westbound car was approaching in full view at a distance of seventy-five to one hundred feet, which car she either saw or could have seen had she looked, and the motorman saw or could have seen her at the same distance. This car struck her as she was about to step across the track upon which it ran. It was held erroneous to nonsuit upon the ground of contributory negligence.

*Eagan* v. *Jersey City, &c., Railway Co.,* 45 *Vroom* 699, is distinguishable. In that case the plaintiff alighted from a trolley car, passed behind it, and proceeded to cross the ad-

joining track, upon which cars ran in the opposite direction, *without making any observation for his own safety* except to "look up" when the car from which he had alighted prevented his view of the other track, and without waiting until that car had passed far enough to permit observation.	He was struck by a car *not shown to have been running at excessive speed.*	This court held he was guilty of contributory negligence.	Chancellor Magie, who delivered the opinion, said: "The duty of a person crossing the roadbed of a public highway used by such vehicles has been declared in this court to require him to use his powers of observation to observe approaching vehicles and to exercise a reasonable judgment when and how to cross without collision.	It has been here asserted that when obstacles temporarily intervene to prevent observation, reasonable prudence would require delay until the required observation can be made."	Cases decided on similar grounds are *Hageman* v. *North Jersey Street Railway Co.,* 45 *Vroom* 279; *affirmed,* 46 *Id.* 939; *Shuler* v. *North Jersey Street Railway Co., Id.* 824.

These decisions have not shaken the authority of *Consolidated Traction Co.* v. *Glynn, supra,* nor of *Newark Passenger Railway Co.* v. *Block, supra.*

In the case before us, the trial judge properly refused the motions for nonsuit and for direction of a verdict in defendant's favor.

The judgment under review should be affirmed.

*For affirmance*—THE CHANCELLOR; GARRISON, SWAYZE, TRENCHARD, PARKER, MINTURN, BOGERT, VREDENBURGH, VROOM, CONGDON, JJ.	10.

*For reversal*—THE CHIEF JUSTICE, BERGEN, VOORHEES, DILL, JJ.	4