TERENCE DEVINE, PLAINTIFF AND APPELLANT, v. PUB-
LIC SERVICE RAILWAY COMPANY, DEFENDANT AND
RESPONDENT.

Argued June 20, 1913—Decided November 17, 1913.

1. A plaintiff, struck, and rendered unconscious, while crossing a trolley car track, having testified that he knew what struck him and that it was a trolley car, cannot properly be non-suited upon the theory that there was no evidence that he was hit by a car, although he testified on cross-examination that he did not see the car that hit him.

2. It is the duty of the motorman of a street railway car, when approaching a crosswalk, to have his car so far under control that he will not endanger the safety of pedestrians engaged in the lawful and customary use of such crosswalk.

3. Where the plaintiff, who was walking upon a crosswalk of a public highway, was struck by a street railway car, as he was clearing the far rail of the far track, and the evidence justified the inference that the car was running twenty miles an hour

and also tended to show that the motorman, when one hundred feet away, ought to have seen the plaintiff in the act of crossing, it was open to the jury to find either that the motorman did not look, or that he did not make proper effort to stop, or that his inability to stop was due to the excessive speed of the car, and therefore the question of the negligence of the defendant company was for the jury.

4.  The rule requiring one exercising his lawful rights in a place where the exercise of lawful rights by others may put him in peril, to use such precaution and care for his safety as a reasonably prudent man would use under the circumstances, is the measure of duty of one who crosses a public highway on foot. He must use his powers of observation to discover approaching vehicles, and his judgment how and when to cross without collision, but his observation need not extend beyond the distance within which vehicles moving at a lawful speed would endanger him. If obstacles temporarily intervene to obstruct observation, he should wait until the required observation can be made.

5.  A pedestrian upon a crosswalk has a right to assume that the motorman of any street car which may be approaching will expect pedestrians to be crossing and will have the car under proper control accordingly, and will respect his right to cross if he is in a position to justify such crossing under a reasonable belief that he can safely do so if both he and the motorman exercise reasonable care.

6.  Where the plaintiff testified that when he started across the defendant's street car tracks at a street intersection, a passing westbound car on the near track was seventy or seventy-five feet away, and he could see and looked one hundred feet down the eastbound track and neither saw nor heard the car approaching on that track which struck him as he was clearing the eastbound track, the question whether he was to be believed was for the jury, in view of the fact that the night was dark, misty and rainy, and of the permissible inference from the evidence that the speed of the approaching car was excessive. Also the question whether the plaintiff was guilty of contributory negligence was for the jury.

On appeal from judgment of the Supreme Court.

For the appellant, *Osborne & Astley* (*Wilbur A. Heisley* on the brief).

For the respondent, *Lefferts S. Hoffman, Leonard J. Tynan* and *Howard MacSherry*.

The opinion of the court was delivered by

TRENCHARD, J.   This appeal brings up for review a judgment upon a nonsuit directed by the trial judge at the Essex Circuit in an action for personal injuries.

We are of opinion that the nonsuit was erroneous. When granted, it was open to the jury, if they believed the evidence for the plaintiff, to find, among others, the following matters of fact: On January 21st, 1911, about eight o'clock at night, the plaintiff was on the northwest corner of Clinton avenue and High street, Newark, and was about to cross Clinton avenue at a proper crossing place. It was a dark, rainy and misty night. He waited there for vehicles to pass and then walked out close to the near or westbound street car track. He waited there for a westbound car, which had stopped in front of him, to move on. After it had gone he stepped upon the westbound track and stood until the car was seventy or seventy-five feet away and then looked down the eastbound track about one hundred feet, and seeing and hearing nothing, started across the tracks. As he was about clearing the eastbound track he was hit and injured by an eastbound trolley car of the defendant company.

The grounds urged upon the motion to nonsuit were that— *first,* there was no evidence of negligence on the part of the defendant company, and *second,* that the plaintiff was guilty of contributory negligence.

We think both questions were for the jury.

It is now argued, though it seems that the contention was not made in the court below, that there was no evidence that the plaintiff was struck by a trolley car. We think there was. The plaintiff testified:

"*Q.* By what were you struck, if you know?

"*A.* By a trolley car."

It is true that on cross-examination he further testified:

"*Q.* You didn't see the car that hit you at all?

"*A.* No, sir."

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

"*Q.* Do you know how far you were knocked?

"*A.* I was unconscious.

"*Q.* When did you regain consciousness?

"*A.* I don't know. Some time the next day at the hospital."

The plaintiff's testimony was, therefore, in effect that he knew what struck him and that it was a trolley car. That clearly justified the inference that he was struck by a trolley car, even though he testified that he did not see the car that hit him. The source of his knowledge was not inquired into and did not directly appear, but it is a most reasonable inference that he acquired the knowledge through his sense of hearing, immediately before he was struck and rendered unconscious. The nonsuit, therefore, cannot be justified upon that ground.

Also, it seems to be argued that, if plaintiff was hit by the car, there was no evidence of negligence in its operation.

We think there was. It is the duty of the motorman of a street railway car when approaching a crosswalk to have his car so far under control that he will not endanger the safety of pedestrians engaged in the lawful and customary use of such crosswalk. *Kraut* v. *Public Service Railway Co.,* 53 *Vroom* 437.

Whether, in the present case, there was negligence in the operation of the car which hit the plaintiff using the crosswalk, depends largely upon the speed of the car and the distance which the car had to go at the time the motorman saw, or ought to have seen, the plaintiff in the act of crossing.

The plaintiff testified in effect, that, notwithstanding the weather conditions, he could see about one hundred feet down the track. It was, therefore, a reasonable inference that the motorman, if he had looked at that or any intermediate point, could have seen the plaintiff in the act of crossing. As to the speed of the car, the inference is justified that, while the plaintiff was walking from the near rail of the near track to the far rail of the far track, a distance of perhaps fifteen feet, the car traveled a distance of one hundred feet, and was therefore traveling about twenty miles an hour. It was, therefore, open to the jury to find either that the motorman did not look, or that he did not make proper effort to stop, or that his

inability to stop was due to the excessive speed of the car. So we think the question of the defendant's negligence was for the jury.

Nor can it be said, under the evidence, that the plaintiff was guilty of contributory negligence as a matter of law.

The rule requiring one exercising his lawful rights in a place where the exercise of lawful rights by others may put him in peril, to use such precaution and care for his safety as a reasonably prudent man would use under the circumstances, is the measure of duty for one who crosses a public highway on foot. He must use his powers of observation to discover approaching vehicles, and his judgment how and when to cross without collision, but his observations need not extend beyond the distance within which vehicles moving at lawful speed would endanger him. If obstacles temporarily intervene to obstruct observation, he should wait until the required observation can be made. *Newark Passenger Railway Co.* v. *Block,* 26 *Vroom* 605.

The evidence in the present case differs somewhat from that considered by the Supreme Court when a verdict for the plaintiff in the same case was set aside on a rule to show cause. There, the testimony satisfied the court that the plaintiff started across while the car upon the near track obstructed his view of the car that struck him. But we think that under the testimony in the present case the question whether the plaintiff's conduct measured up to the required standard of duty was for the jury. The plaintiff was upon a crosswalk. He had a right to assume that the motorman of any car which might be approaching would expect pedestrians to be crossing and would have the car under proper control accordingly, and would respect his right to cross if he was in a position to justify such crossing under a reasonable belief that he could safely do so if both he and the motorman exercised reasonable care. *Kraut* v. *Public Service Railway Co.,* 53 *Vroom* 437. We have pointed out that the plaintiff testified that when he started across, the westbound car upon the near track was seventy or seventy-five feet away, and that he could see and looked one hundred feet down the eastbound

track, and that he neither saw nor heard the car approaching on that track. Whether, in view of the permissible inference of excessive speed of the car that struck him, and the fact that it was a dark, rainy and misty night, the plaintiff's testimony was to be believed or disbelieved was for the jury to determine, and that question, as well as the question whether, under these circumstances, he was guilty of contributory negligence should have been submitted to the jury.

The judgment of the court below will be reversed and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, MINTURN, KALISCH, VREDENBURGH, CONGDON, WHITE, HEPPENHEIMER, JJ.    11.